**BANTUELLE v. CHAPMAN. (No. 2817.)**

(Court of Civil Appeals of Texas. Texarkana. Nov. 15, 1923.)

**1. Fixtures ⟨key⟩4 — Whether articles annexed are permanent part of house question of intention.**

Whether articles affixed or annexed to a house for use or convenience are a permanent part or fixtures thereof, is a question of intention.

**2. Bankruptcy ⟨key⟩268—Whether bankrupt intended to make articles annexed to building fixtures immaterial as respects right of removal by purchaser.**

Whether the owner of a store building can make articles affixed or annexed thereto for use or convenience a permanent part of the building by so intending is immaterial as respects the right of removal by a purchaser of the stock of goods and fixtures under bankruptcy proceedings, which depends on whether he acquired an interest therein or title thereto.

**3. Bankruptcy ⟨key⟩396(5)—Store building owned and used by married man held exempt.**

A store building owned by a married man, and used, at the time of his bankruptcy, as a

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

place to carry on his business, as the head of a family, *held* exempt.

**4. Bankruptcy ⬤═396(5) — Fixtures ⬤═5— Shelving, electric fans, and signboards generally part of store building.**

Generally, articles, such as shelving, electric ceiling fans, and signboards, attached to a store building with intent to make them permanent accessories thereof, are part of the building, and hence exempt in bankruptcy proceedings, if the building is.

**5. Bankruptcy ⬤═399(1)—Store fixtures held not claimed as exempt.**

Where "store fixtures" were scheduled and valued by a voluntary petitioner in bankruptcy as assets, his claim to the building as exempt *held* not to include the fixtures.

**6. Bankruptcy ⬤═399(1)—Bankrupt may waive exemption of store fixtures.**

A voluntary petitioner in bankruptcy may waive exemption of store fixtures in a store building claimed as exempt.

**7. Fixtures ⬤═29—May be treated as personalty and severed from building.**

Fixtures can be treated by parties as in the nature of personalty and severed from the building.

**8. Fixtures ⬤═27(1)—Law of fixtures yields to special contract provisions.**

The law of fixtures yields to special contract provisions.

**9. Bankruptcy ⬤═268 — Purchasers of stock and fixtures from trustee may remove fixtures without liability for damages.**

Voluntary bankruptcy proceedings vest the bankrupt's title in the trustee, and impliedly empower him to sell and give title to all the assets of the bankrupt's general estate to purchasers, who therefore acquire title to store fixtures scheduled as assets under a purchase and conveyance of the stock of goods and fixtures, and may remove them without incurring liability for damages.

**10. Landlord and tenant ⬤═200(1)—Purchaser of stock of goods liable for rent for time they occupied building only.**

One occupying a store building for six days, after purchasing a stock of goods therein from persons who were occupying under agreement to pay $75 a month, *held* liable for only $15.

Appeal from District Court, Titus County; J. R. Warren, Judge.

Action by A. Chapman against Fred Bantuelle. Judgment for plaintiff, and defendant appeals. Modified and affirmed.

The appellee, the owner of a store building, sued the appellant for (1) one month's rent, and (2) "damages to his said property." The rent was alleged to be due and owing under an implied contract to pay same. The wrong, and the resultant damages to the property, was alleged to consist in the removal of (1) "two sections of shelving that were nailed to the wall"; (2) "fifty tables and counters be-

longing to the building"; (3) "four cash carriers bolted and fastened to the ceiling"; (4) "ten window shades"; (5) "eight electric wire cords and sockets suspended from the ceiling, used for lighting the building"; (6) "one heating stove"; (7) "two ceiling electric fans bolted to the ceiling"; (8) "one shoe settee bolted to the floor"; (9) "one signboard on the front of the building, attached and fastened thereto." It was further alleged that the appellant broke or was responsible for the breaking of "a plate glass from the front door" and of "one transom glass above the door." The appellant entered a general denial, and specially pleaded in sufficient detail a sale and purchase under appellee's consent of the property alleged to have been taken from the building.

The trial court made the following findings of fact and conclusions of law.

**"Findings of Fact.**

"(1) I find that on 18th day of November, 1920, and for some time prior thereto, the plaintiff was and had been engaged in the general mercantile business at Winfield, in Titus county, and owned the brick store building at said place, in which he conducted the said business, and that said building and lots upon which it is situated was his business homestead, and was exempt to him as such.

"(2) That on said date he filed a voluntary petition in bankruptcy in the federal court at Texarkana, and was on said petition duly adjudged a bankrupt. That in the schedule of property inventoried by him was the brick store building, situated on lots 8 and 9, on block No. 8, in the town of Winfield, as described in the petition in this case, and that same was claimed by him to be exempt. That in the bankruptcy proceedings said house and lot was set apart to the bankrupt as exempt.

"(3) That plaintiff listed and surrendered to the trustee in bankruptcy his stock of general merchandise, furniture, and fixtures in the said building.

"(4) That R. P. Dorough, trustee in bankruptcy, under proper order of the court, on December 6, 1920, sold to Weiller and Benjaman the said stock of general merchandise, furniture, and fixtures, situated in the said building, and executed to them a bill of sale therefor.

"(5) That Weiller and Benjaman, by agreement with A. Chapman, the plaintiff herein, continued to occupy the said building with said stock of merchandise, agreeing to pay A. Chapman a rental therefor, $75 per month, and they so occupied same until December 27, 1920, on which date they sold the stock of merchandise, furniture, and fixtures, so purchased by them from the trustee in bankruptcy, to the defendant, Fred Bantuelle.

"(6) That immediately upon making the purchase defendant, Bantuelle, took charge of the stock of merchandise and began preparation to move the same from said building. That plaintiff objected to his moving the stock until the rent was paid, and also objected to his moving any fixtures attached to the building, claiming the same to be a part of the building and be-

longing to him. That on or about January 1, 1921, defendant, Bantuelle, removed all the merchandise and all of the furniture and fixtures not attached to the building, and also took from and removed from said building the following, which I find were permanently attached to the building and a part thereof, to wit: Shelving, of the value of $250; two electric ceiling fans of the value of $50; one signboard of the value of $5. I also find that he broke a window in the transom glass, damaging the building in this respect in the sum of $25; thus aggregating the sum of $330 damages to the building because of the fixtures removed and glass broke. I find the plaintiff was entitled to the sum of $75 as rent on the building.

### "Conclusions of Law.

"Upon the foregoing facts I conclude;

"(1) That the building in question and all fixtures permanently attached thereto and as a part of the same was the property of the plaintiff, and the defendant had no right to remove any of such fixtures.

"(2) That plaintiff had a lien on the stock of merchandise to secure his rent; and, the defendant having removed and converted the same, he should pay plaintiff said rent.

"Judgment will therefore be entered for plaintiff against the defendant for the sum of $405."

The following is the schedule of property listed and filed by the bankrupt:

"In the Matter of A. Chapman, bankrupt, Schedule B. (2) Personal property. C. Stock in trade in my business of general merchandise at Winfield, Texas, $28,000. Store fixtures $1,675. Schedule B. (5) Particular statement of property claimed as exempt from the operation of the act of Congress relating to bankruptcy, itemized. House and lot in Winfield, Texas, in which I now reside with my family, of the value of $3,000; household and kitchen furniture and wearing apparel, $500; two horses in Winfield at my home $200; one Oliver typewriter, $25; one desk, $10; west brick building in Winfield, Texas, on lots 8 and 9 in block 8, now used as a mercantile house."

The following is the property set apart as exempt:

"In the Matter of A. Chapman, Bankrupt, No. 155. In Bankruptcy at Texarkana on December 8, 1920. The following is a schedule of property designated and set apart to be retained by the bankrupt aforesaid, as his own property, under the provisions of the acts of Congress relating to bankruptcy: Residence house and lot in Winfield, Texas, $3,000; business brick building, west lots 8 and 9 in block 8, Winfield, Texas, $5,500; household and kitchen furniture and wearing apparel, $500; one Elkhart touring car, $500; two horses, $200."

The trustee after sale executed a conveyance, as far as material to state—

"For and in consideration of the sum of $16,000 cash in hand paid to me by Weiller and Benjaman, the receipt whereof is hereby acknowledged, do hereby grant, sell, and convey and deliver to the said Weiller and Benjaman the following described personal property, to

wit: The stock of general merchandise, furniture, and fixtures, and accounts not hypothecated belonging to the estate of A. Chapman, bankrupt, in the town of Winfield, Titus county, Texas, and situated in the one-story brick building belonging to said A. Chapman, bankrupt, and in the warehouse used by said A. Chapman in the rear of said building in said town of Winfield."

It was proven by the referee in bankruptcy as follows:

"A. Chapman never filed in my court any protest against the report of the trustee on exemptions, nor did he ever file any protest against the sale of any property of whatsoever kind or character."

There is evidence on the part of appellee showing, as the court found, that the appellant laid claim to and removed, in addition to the other movable property, the shelving and ceiling fans and signboard. There are conflicting circumstances concerning the breaking of the transom glass. There is no evidence that appellant expressly agreed to pay the rent for the month of December, but he did occupy and use the building for six days without paying any rent therefor.

E. Newt Spivey, of Texarkana, for appellant.

J. A. Ward, of Mt. Pleasant, for appellee.

LEVY, J. (after stating the facts as above). There was involved in the trial of this case, by reason of the allegations in the plaintiff's petition, a finding of fact of what property was actually attached to the brick store building in Winfield, Tex., owned by appellee, and used by him in a general mercantile business.

The court, after hearing the evidence, made, in effect, the following findings of fact: (1) That the settee chairs, tables, stove, and window shades were "furniture"; (2) that the cash carriers, counters, and the electric light drop wire cords and sockets were "fixtures not attached to the building," meaning that they were not actual fixtures of, but merely personal chattels at the time in the building; (3) that the shelving, electric ceiling fans, and the signboard were "fixtures permanently attached to the building and a part thereof." There is no conflict in the evidence concerning these facts. As concluded by the court, the legal effect attaching to these facts was, viz.: (1) That the appellant under the bankruptcy proceedings and sale became and was the owner, with the right of removal from the store building, of the "furniture" as well as the merely personal chattels enumerated above; (2) that the appellant was not the owner and did not acquire any interest or title nor right of removal from the "business brick building" belonging to the appellee, under the bankruptcy proceedings and sale of the "fix-

tures permanently attached to the building and a part thereof." The appellant challenges the court's conclusion denying to him the right to have, and in holding him subject to damages for the removal of the shelving, electric ceiling fans, and the signboard, classed by the court as "fixtures" within the meaning of the law. The shelving, electric ceiling fans, and the signboard were, according to the undisputed evidence, attached to the store building in a manner merely to hold them fast and useable, and were not irremovable without causing a permanent or material physical injury to the house as it was built. The court's finding of fact that these articles were "fixtures" was upon the evidence that the appellee, as owner of the store building, intended at the time of their erection or construction to make them permanently a fixed accessory to the store building and a part of it.

[1-5] It is, as often held, in every case a question of intention to make certain articles for use or convenience affixed or annexed to the house a permanent part or fixtures, within the meaning of the law, of the house, so as to become part of it. Therefore in this case there is not involved, and cannot be, any question as to whether or not an owner of a store building can by intention on his part make articles of the kind here a permanent part of the store building, so as to become a part of it, legally speaking. The contention of the appellant is to be considered only from the standpoint of whether or not he acquired an interest or title to and right of removal of the character of "fixtures" in evidence, as a purchaser under the bankruptcy proceedings. There is no doubt that the store building was exempt property under the laws of Texas; the appellee being a married man and the store building being used at the time of the bankruptcy as a place to carry on his business as the head of a family. And, further, there is no doubt that the "fixtures" in hand would be, generally speaking, legally considered a part of the store building, so as to become a part of it and consequently exempt along with the "store building." But in the precise facts of the case the appellee seems to have by operation of law vested the trustee in bankruptcy with the title to such "fixtures," and to have expressly not reserved them. It is affirmatively shown that at the time the appellee, being insolvent, filed a voluntary petition in bankruptcy, he specifically and without qualification scheduled and valued as "assets" subject to sale for the benefit of his creditors the following: "store fixtures." The only "store fixtures" that he had in his possession and owned were located in the brick store building in which he was then doing business. At the same time with his petition the appellee also filed a claim for exemption allowable to him under the laws of Texas. He specifically claimed, besides certain other things not material to state, as exempt to him the following: "West brick building, on lots 8 and 9 in block 8, now used as a mercantile house." This claim for exemptions was never changed or amended. The bankruptcy court set aside to appellee as exempt property the following: "Business brick building, west lots 8 and 9 in block 8, Winfield, Texas, $5,500." The trustee made sale and executed a conveyance to the purchasers of the following, besides other things not material to state: "Furniture and fixtures situated in the one-story brick building belonging to A. Chapman, bankrupt, in Winfield, Titus county, Texas." It certainly does no violence to these voluntary acts of appellee, as evidenced by his schedule and claim, to treat them as meaning that the "store fixtures" were to be "assets" of his general estate, and agreeing that they could be disposed of for the benefit of his creditors, and that his homestead exemption was to be to the extent of the "west brick building" without, and not inclusive of, "the store fixtures" therein.

[6-8] The very language used by the appellee in these written instruments, of which he had full knowledge, admits of no other meaning than that he did not claim nor intend to claim as exempt "the west brick building" together with "the store fixtures." His voluntary act of separately scheduling the "store fixtures" as "assets" of the general estate, and his distinct act of claiming as exempt the "building" in which the "store fixtures" were at the time located, are sufficiently contradictory of any intention and purpose on appellee's part to claim and hold as exempt such "store fixtures." That the appellee could legally waive the claim of exemption and make conveyance of the "fixtures," separate and distinct from the "store building," is settled by repeated rulings of the courts. Fixtures can be treated by the parties as in the nature of personalty, and severed from the building. 19 Cyc. p. 1070; 11 R. C. L. p. 1066; 2 Page on Contracts, p. 991; 2 Devlin on Real Estate, § 1227. And, further, the law of "fixtures," yields to special provisions of contract between parties. Wright v. Macdonnell, 88 Tex. 140, 30 S. W. 907. The same principle is involved in the cases respecting severance and sale of growing trees. Carter v. Clark & Boice Lbr. Co. (Tex. Civ. App.) 149 S. W. 278; Houston Oil Co. of Texas v. Boykin, 109 Tex. 276, 206 S. W. 815. Therefore the appellee's claim of homestead exemption of a store "building" should not, in this case, necessarily, as a matter of law, be construed and held to mean to include the "store fixtures" therein. In other words, it should not be held in the facts of this case that the appellee's "claim for exemption," as filed by him in the bankruptcy proceedings, of a store "building" .

# 940

necessarily extended to and included as a matter of law the "store fixtures" therein.

[9]. The schedule of assets of the general estate, and the claim for exemptions are legal proceedings expressly required to be made under the Bankrupt Act (U. S. Comp. St. §§ 9585–9656). And the bankruptcy proceedings, voluntary as they were here, operated as a matter of law to vest in the trustee the title of the bankrupt, and necessarily imply the power to the trustee to sell and give a title thereto to the purchasers, of all the "assets" of the bankrupt's general estate. Consequently the purchasers in .this case legally acquired the right and title to the "store fixtures" under the purchase and conveyance of the trustee, and they could remove them from the building, and were not legally subject to damages for so doing.

[10] The court allowed a recovery for $75 as of conversion of the property on which a rent lien existed. The conclusion reached was a correct one, if the pleadings would authorize such recovery. The pleadings, though, as they appear in this record on appeal, only predicate recovery of rent for one month on an implied contract to pay same. It is undisputed that the appellant occupied the store building for six days, and for those six days he would owe a reasonable sum of money to appellee, the other parties not agreeing, it appears, to pay same. He was required to pay, as a reasonable sum at the rate of $75 per month, which would be $15 for the six days, and that sum should here be allowed the appellee as rent.

The evidence is not clear as to who broke the transom glass. If the appellant himself did not break the glass, yet the circumstances tend to show that some one of his workers did do so, and the court's finding of fact is warranted. These workers were not shown to be independent contractors, but inferably were employees for whose act the appellant was legally responsible.

The judgment is therefore modified so as to only allow a recovery to appellee of $25 for the transom glass and $15 for rent, aggregating $40; and as so modified the judgment will be affirmed. The costs of appeal will be taxed against the appellee.

Modified and affirmed.