## L. A. CLIFT v. KAUFMAN & RUNGE.

### (Case No. 4718.)

1. HOMESTEAD.— In an application by the widow, pending administration on the estate of her deceased husband, for an allowance in lieu of homestead, it was shown that up to death of deceased he lived with his family on lots 6 and 7, in a town. He carried on his business as a merchant in a store-house on lot 4, in which he owned an undivided interest of five feet in the front thereof, his children by a former marriage owning the remainder of that lot. Lot No. 6 was the exclusive property of the children of the deceased by a former marriage. One-half of lot No. 7 was also owned exclusively by the children of the first marriage, and the other half was owned jointly by the children of both marriages. *Held,*

    (1) An allowance should have been granted the surviving widow and children, in lieu of the homestead.

    (2) It was immaterial to the issue to inquire what separate property might be owned by the children of the first marriage, or held by them as property once constituting the estate of the first wife.

    (3) The homestead allowance, when set aside, must be taken alone from the estate of the deceased husband or wife.

    (4) Considering the condition of the title, both of the business house and family residence, there was no such homestead as could be set apart to the widow and children.

    (5) The fact that a step-child, ward or niece, who for the time being is a member of the widow's family, owns a home in which all live, is no answer to her demand for an allowance in lieu of homestead.

    (6) The cessation of business on the death of the husband, which he had conducted on lot 4, did not divest his undivided interest of five feet of its protection from forced sale by reason of its homestead character. He being insolvent, his title and interest in it passed at once to and vested in his heirs. This case, in this respect, distinguished from Shryock & Rowland v. Latimer, 57 Tex., 674.

2. DISTINGUISHED.— This case distinguished from Ball, Hutchings & Co. v. Lowell, 56 Tex., 579, which is discussed.

3. CASES FOLLOWED.— Miller v. Menke, 56 Tex., 549; Pryor v. Stone, 19 Tex., 371; Henderson v. Ford, 46 Tex., 628; Mabry v. Ward, 50 Tex., 411; and McDonald v. Campbell, 57 Tex., 615, followed.

APPEAL from Ellis. Tried below before the Hon. Geo. H. Aldredge.

*Powell & Grace*, for appellants, relied on Whitehead v. Nickelson, 48 Tex., 517; Roco v. Green, 50 Tex., 490; Thompson on H. & E., §§ 45 and 46; Const., art. XVI, §§ 50, 51, 52; R. S., title 37, ch. 18; Horn v. Arnold, 52 Tex., 165; Presley's Heirs v. Robinson's Heirs, 1 Tex. Law Rep., No. 8, p. 597; Gilliam v. Neill, 1 Tex. Law Rev., No. 4, p. 61.

*S. C. McCormick*, for appellees, cited: Const., art. XVI, sec. 50; R. S., arts. 1993, 2335; 31 Tex., 677; Presley's Heirs v. Robinson's Heirs, 1 Tex. Law Rep., 597; Shryock & Rowland v. Latimer, 57 Tex., 674; Miller v. Menke, 56 Tex., 562.

*Ferris & Rainey*, also for appellees, cited: Ball, Hutchings & Co. v. Lowell, 56 Tex., 579; Clements v. Lacey, 51 Tex., 150; Jenkins v. Volz, 54 Tex., 639.

WEST, ASSOCIATE JUSTICE.— The homestead of S. A. Clift, during his married life, and at the time of his death, was situated on lots 4, 6 and 7, in block 9, in the town of Waxahachie. In the brick building, situated on a part of lot number 4, he had a store, and there exercised his business or calling of selling goods, wares and merchandise. The family residence and house proper, occupied during his life-time by the decedent with his wife and children, was situated on lots 6 and 7.

The brick store, or at least the very small undivided portion of it owned by the intestate in his own right, and in which he carried on his business as a merchant, according to the previous decisions of this court, constituted at the time of his death a part of his homestead. Miller v. Menke, 56 Tex., 549; Pryor v. Stone, 19 Tex., 371; Henderson v. Ford, 46 Tex., 628. See, also, Carter v. Randolph, 47 Tex., 380; Green v. Crow, 17 Tex., 187; Reeves v. Petty, 44 Tex., 249; Clements v. Lacey, 51 Tex., 165; Gilliam v. Neill, 1 Tex. Law Review, January 27, 1880, and other recent cases; Mabry v. Ward, 50 Tex., 411; McDonald v. Campbell, 57 Tex., 615.

The small and undivided interest of S. A. Clift in this brick storehouse at the time of his death consisted of only a front of five feet in lot 4; this portion being his individual share of the south half of the north half of the unsold remainder of that lot; his children by his former wife owning in their own right the remaining unsold balance of this lot, and, as his heirs, having also an equal claim in common with the children of his second marriage in these five feet owned by him. His second wife's interest in this property was practically nothing.

Lot No. 6, on which a portion of the family residence was situated, was the exclusive property of his deceased wife's children; neither the surviving widow, nor her children, having a shadow of title to it or claim upon it, in any manner.

In lot No. 7, the children of the first wife also have an exclusive interest of one-half, and an equal interest with the children of the second marriage in the remaining half of it.

The surviving widow has, for all practical purposes, no interest in her husband's one-half of lot No. 7, this one-half having been the separate property of her deceased husband; and as a consequence, as before said, this remnant of lot No. 7 is held practically to her exclusion by her own children, jointly with the children of the first marriage.

The entire property composing the family residence proper, with its improvements, situated on lots 6 and 7, is of no great value, and has been in use since 1858.

Owing to the position of the buildings and improvements constituting the family residence, and the state of the legal title to lots 6 and 7, and also to the character of the title and the extent of interest of the estate of the deceased in lot No. 4, the district court was in error, under all the circumstances of the case, in not granting the surviving widow and children a suitable allowance out of the estate, in lieu of the homestead, as is provided in the statute (R. S., p. 294, art. 1993 *et seq.*). Mabry v. Ward, 50 Tex., 404.

It was error, in determining this question as to the homestead exemption, for the court, as one of the elements entering into its judgment, to take into consideration what separate property might be owned by the children of the first marriage, or might be held by them, as constituting a part of the separate estate of the intestate's first wife.

The homestead allowance, if set apart at all by the probate court for the surviving widow, must be set apart, alone, from the estate of the decedent, over which that court has jurisdiction. It is only over the property of the estate that the probate court can exercise control.

In Presley's Heirs v. Robinson, 57 Tex., 460, it was held that Mrs. Robinson, the widow of Presley, though, when she married him, she was herself a widow, and possessed of a homestead of her own, and at the death of Presley still owned it and controlled it, was nevertheless entitled to a homestead right and interest in the estate of her second husband, and that she still did not forfeit that right by marrying a third husband after Presley's death. Carter v.

Randolph, 47 Tex., 376; Shryock & Rowland v. Latimer, 57 Tex., 675; Putnam v. Young, 57 Tex., 461.

Here, if lots 6 and 7, on which the family residence was situated, were entirely the property of the children of the first wife, and constituted no part whatever of the assets of the intestate's estate, it cannot be denied but that under the language of the constitution (art. XVI, sec. 51), and the provisions of the statute (R. S., art. 1993 *et seq.*), and under the previous decisions of this court, construing the constitution and laws on this subject (Miller v. Menke, *supra;* 1 Pasch. Dig. Laws, art. 1305 and note, 481), the appellant, as the surviving widow, would be entitled to have the homestead, or its value, set apart to her out of her deceased husband's estate. If this be not done, she would have no homestead, or allowance in lieu of it. The residence of her step-children is no more her property or her home, as a matter of right, than is the home of a stranger. Were this not so, the step-children on arriving of age, and, in fact, long before that period, on the application of their guardian, might partition, parcel out, or sell, the family residence, which is entirely their property, and subject to their undisputed control, and to which the step-mother has no color of right, unless she happen to be the guardian of the children. In that event, her right to remain in possession of the family residence would not be based on the assumption that it was the homestead of her deceased husband, or on the ground that she was the surviving head of the family, but because she happened to be, for the nonce, the guardian of the minors. And this relation, even, she could not sustain to them without their consent, at least in the present case, for now the youngest of them is over fourteen years of age and the eldest is of full age. R. S., art. 2505.

In this state of affairs, with the family residence and the business house of the decedent in the condition as to the title and interest of the intestate in it in which the record discloses them to be, it cannot be said that there is such a homestead as can be itself set apart to the widow and children. It presents a case similar in its features to one where it may be said that no homestead can be found, as belonging to the estate of the deceased, among the effects of the estate. R. S., art. 1994.

In such a case, it becomes the duty of the court to make the allowance in lieu of the homestead, which cannot, in the nature of things, be set apart in kind.

The fact that some one, who happens to be at present an inmate of the same house with her, or who happens for the time being to

be even a member of the same family, owns a residence with all the appurtenances and comforts of a house, cannot deprive the surviving widow of her right to her homestead. The fact that some one else, who is an acquaintance of hers, or ward, or niece, or nephew, or step-child, or who lives under the same roof with her, is provided with a comfortable home, is no answer in law to her demand for that to which, under the law, she is entitled.

The interest of S. A. Clift, deceased, in lot No. 4, his interest being, as before stated, an undivided front of five feet, upon his death, under the rule laid down in Miller v. Menke, before cited, being a part of his homestead up to the hour of his death, did not, by reason of that event, as the district court held, become divested of its exempt qualities, because his wife and surviving children did not propose or were not able to carry on the same business that he had in his life-time for their support pursued.

On the contrary, under the operation of the constitution and laws, the estate being insolvent, his title to it and his interest in it, undivided and just as it was, passed at once to, and vested in, his rightful heirs on his death. R. S., art. 2002. The case of Shryock & Rowland v. Latimer, 57 Tex., 674, referred to in argument, presents a different state of facts from the present. In that case it was held that the head of the family, who was still alive, had, under the facts of the case, abandoned and ceased to use the property as a place in which to exercise his calling or business, and being so abandoned by him, for that reason, and that alone, it was no longer protected as a part of the homestead. He had ceased to use it as his place of business, or to exercise his calling. Here the property was used as a place of business by the intestate up to the time of his death. He never at any time abandoned it, and hence, at his death, by operation of law, it passed to his heirs, as did the balance of his homestead.

But owing to the position, character and nature of the improvements constituting the family residence, as well as the state of the legal title to the property itself, we believe that the judgment of the district court should be reversed and the cause remanded, with directions to the court below to have a sale made of the unexempt property of the estate, to raise an allowance to the amount of $2,000 to be divided between the widow and the children by the first wife, as seems to be required by the statute. R. S., art. 1998.

As the action of the district court appears to have been, to a considerable extent, influenced by his views as to the effect to be given to the case of Ball, Hutchings & Co. v. Lowell, 56 Tex.,

579, it may be proper to make a remark in reference to that case.

The two cases are not similar; in that case the court held that there was already a homestead in existence, located on the separate property of the surviving wife. In this case the family residence is situated on property in which the surviving wife has practically no title or interest, legal or equitable. So far as she is concerned, the residence is situated on the property of strangers.

Another point of difference, too, is, that in that case the homestead had been originally the common property of the two spouses, and the husband had given it to the wife to be specially used as a homestead.

Another reason, too, given by the court, for refusing in that case the application of the surviving wife, was that the other property, out of which the allowance in lieu of the homestead was sought to be raised, had been already incumbered by the husband in his lifetime with a deed of trust, and that it was in some sort, under the facts of that case, a breach of faith with the creditors to take it from them and give it to the wife, when the husband had in his life-time expressly provided her with a homestead, which she was then actually using and enjoying.

The court also, in its opinion in that case, notes other points which go to show that in several respects the two cases are dissimilar.

We do not regard the decision in this case as in conflict with that of the court in the case of Ball, Hutchings & Co. v. Lowell.

It is therefore unnecessary to determine, if this case was in all its features similar, whether, being a decision of very recent date, we would regard it as authority binding on us. It may, however, be proper to say that the decision was confessedly made, and must be considered, with reference to the precise state of facts then before the court, and to which the court was then addressing itself.

It may also be observed that the decision, though undoubtedly one that was much considered by the court before its final conclusions were arrived at, and for that reason entitled to very great respect, did not at the time receive the assent of the entire court, and that each member of the court deemed it proper to place upon record, separately, the special reasons which had brought his mind to the conclusions reached. It may also be observed, in this connection, that the members of the court constituting on that occasion its majority did not base the conclusions reached by them on precisely the same grounds.

As we have before remarked, however, that case was different in its facts from this, and the two are not in conflict.

We wish, then, to be understood as not now bringing in question the correctness of that decision by which the court below seemed to be to some extent governed in its action in this case.

On a proper occasion, and after full argument and due consideration, when a case shall arise in which the exact question shall be presented that was presented in Lowell v. Ball, Hutchings & Co., it will be time enough to determine whether we will adopt that decision as a guide.

It may be, however, proper in this connection to add that it has always appeared to us, that, upon a close examination of the case, there may be found to exist a partial conflict between it and the subsequent case of Presley v. Robinson, cited above, and some previous decisions of the court. See Carter v. Randolph and Mabry v. Ward, cited above, and perhaps other cases.

The judgment is reversed and remanded, with directions to the court below to proceed in said cause in accordance with the views here expressed.

REVERSED AND REMANDED.

[Opinion delivered June 22, 1883.]