# FIRST DISTRICT, 1901.

---

## T. B. SALMONS ET AL. v. MARY THOMAS.

### Decided March 12, 1901.

**1.—Homestead—Abandonment.**

That the surviving wife allows her grown daughters to live with her and to share in the general income of the homestead property, and that the daughters paid taxes on the respective portions therof allotted to them in remainder, does not show that the wife had, as against the claims of the daughters, abandoned her homestead rights in the property.

**2.—Same—Same—Adult Unmarried Daughter.**

An adult unmarried daughter, though a constituent member of the family, has no right in the homestead property, nor in the rents and income thereof, as against the use of the property as a homestead by the surviving parent. Ashe v. Youngst, 65 Texas, 631, followed.

**3.—Same—Guardian—Receipt as Estoppel.**

Where a surviving wife was guardian of her minor daughter, and the latter, upon her own marriage, gave to the former a receipt in full for her interest in the estate which recited that the guardian "has turned over to me all the real estate belonging to me," this did not raise the issue of estoppel against the guardian to assert thereafter her homestead right in such real estate.

**4.—Same—Income of Homestead—Immaterial Error.**

Where, in a contest between children and their mother as to homestead property, the verdict of the jury found in favor of the mother's homestead rights, it was immaterial that the verdict did not specifically dispose of certain sums of money the income of the property, since it necessarily followed from the verdict that the mother was entitled to such money.

**5.—Same—Misjoinder.**

Error in refusing to sustain objections to plaintiff's petition on the grounds of misjoinder, in that it combined a demand for judgment on certain money claims with a suit to recover possession of the homestead, was harmless where no recovery was had on the money demands.

Appeal from Dallas. Tried below before Hon. J. J. Eckford.

*Crawford & Crawford, J. C. Kearby,* and *Moroney & Love,* for appellants.

*Robt. B. Seay,* for appellee.

GILL, ASSOCIATE JUSTICE.—This suit was brought by Mary E. Thomas, the appellee, against Ellen Thomas and Mollie Thomas Salmons, two of her children by her deceased husband, A. A. Thomas. T. B. Salmons, the husband of Mary Thomas Salmons, was also made a party defendant. The purpose of the suit was to establish the right of appellee to the use of 200 acres of lands as her homestead during her lifetime, and to recover certain money demands against the defendants. She also prayed for injunction restraining defendants from interfering with her in the use of the homestead. The defendants Ellen Thomas and Mollie Salmons alleged that the homestead tract had been partitioned, that certain parts of it had been allotted to each of them, and that as to such parts the plaintiff had, by abandonment and for other reasons not necessary to be stated in this connection, lost her right to assert the homestead claim as against their rights to the portions thus set apart and turned over to them. Each of them also claimed, as against the plaintiff, certain money demands which, in view of the disposition of this appeal, need not be stated. They also prayed for injunctions protecting their asserted rights from interference on the part of plaintiff. Pending the litigation and prior to the trial, the court granted temporary writs of injunction in behalf of plaintiff as prayed for, and the entire 200-acre tract was placed in the hands of a receiver, with power to rent it out to the best advantage and account to the court for the proceeds.

A trial by jury resulted in a verdict and judgment establishing the plaintiff's right to the use of the 200 acres (less 37 acres) during her lifetime, or so long as she chose to use it, and enjoining the defendants from interfering with her in the enjoyment of such right. Mrs. Mollie Salmons was adjudged to be the owner of the 37 acres before mentioned, with right to its use free from the homestead claim, and plaintiff was enjoined from interfering with her and her husband in its use. None of the parties recovered anything on their money demands.

After verdict the receiver filed a supplemental report stating the amount of rents collected and the part of the land from which they were received. This report showed that $87.25 had been collected as rents from the 37 acres above mentioned, and the court awarded that sum to Mrs. Salmons. The remaining money in the hands of the receiver was awarded to the plaintiff. A rent note for $113, reported by the receiver as on hand, was not disposed of by the decree of the court, but the receiver, upon compliance with the decree, was discharged.

Ellen Thomas recovered nothing, and she and Salmons and wife have appealed.

A. A. Thomas, deceased, was the husband of Mary Thomas and the father by her of the two children above named as appellants and three

other children who are not parties to this suit. At his death the 200 acres of land in question was his separate property, and was the homestead of himself and wife, and the unmarried children lived with them. He was seized of other lands also, and after his death his property, including the homestead, was partitioned among the children, as follows: The homestead was divided into parts of equal value, and each child was allotted one portion thereof, but the right of the surviving widow to the use of it all as a homestead for the benefit of herself and unmarried daughters was undisturbed.

The lands not included in the homestead were also partitioned equally between the children, so that each child received absolutely an equal share in the lands last named.

At the date of her father's death Mollie Thomas (now Salmons) was a minor and unmarried, and thereafter her mother qualified as guardian of her estate. In the partition above mentioned there was allotted to Mollie 48.35 acres of the homestead, and a 98-acre tract not included in the homestead. In 1887 the mother, as guardian, applied to the probate court in which the guardianship was pending for an order authorizing the exchange of the 98-acre tract belonging to Mollie for 37 acres included in the homestead, and which had in the original partition been allotted to the daughter Sarah, who had married. The reason for the exchange, as stated in the application, was that the 37 acres were valuable and producing an income, whereas the 98-acre tract was wild land, bringing in no revenue. The court granted the order, and the exchange was made. Mollie thus became the owner of two tracts within the homestead, viz., 48.35 acres and 37 acres.

On January 4, 1899, the accounts of the guardian were adjusted, and she was found to be indebted to the ward in the sum of $335, and the guardianship was closed. On the same day Mollie Thomas executed and delivered to her mother the following receipt: "The State of Texas, County of Dallas.—Received, Dallas, Texas, January 4, 1889, of Mary E. Thomas, as my guardian, the sum of three hundred and thirty-five dollars in full settlement of all the money and personal property due in any manner from my guardian, and in addition to said sum of money my said guardian has turned over to me all the real estate belonging to me, and this is a full receipt and acquittance for any and all demands against my said guardian. Mollie A. Thomas." No money was in fact paid upon the delivery of this receipt, and Mollie Salmons testified that her mother was thereby released from the payment of the money on the understanding that she would turn over to the ward the two tracts of land included in the homestead, and that this was in fact done.

Ellen Thomas never married, but remained on the old homestead with her mother until the occurrences which finally resulted in this litigation. She contends, first, that her mother had abandoned the portion allotted to her (Ellen) in the homestead, and that she (Ellen) was therefore entitled to the use, possession, and control of that part; second, that she (Ellen) had adversely held and used it for such length of time as to

bar her mother's right; and, third, that being an unmarried daughter and a constituent member of the family at the date of her father's death, and having remained so, she is entitled to reside with her mother upon the homestead and to share generally in its use and the proceeds of its rental.

The evidence is sufficient to support the finding that the mother had not abandoned her right to the use of the entire homestead during her life. She allowed the daughters to continue to live with her, and permitted her widowed daughter, Mrs. Smith, to return to the old home after her husband's death and share in the general fund. It is true she permitted each to pay taxes on the shares allotted to them in the partition, and to receive the rents when such portion of the land was rented, but there is testimony sufficient to sustain the conclusion that the proceeds of the various parts of the farm, even when thus collected by the owners of the several parts, were used in common so long as they lived together in peace, and that the mother, though she turned over the entire management of the entire premises to her daughters Ellen and Mollie up to the time of Mollie's marriage, did not thereby intend to abandon her rights in the homestead, and that her acts did not constitute an abandonment. In the partition such right was expressly reserved.

There is no evidence to sustain the plea of limitation.

The right asserted by Ellen to share with her mother the use of her homestead by reason of the fact that she was, at the death of her father and continued to so remain, a constituent of the family, is not without force. But whatever may be the rule as between minor children and the surviving parent, it is fairly well settled that an adult unmarried daughter, though a constituent of the family, has no rights in the homestead property as against its use as such by the surviving parent. Ashe v. Youngst, 65 Texas, 631, and authorities cited. In the case cited it is said, among other things: "If the mother survived, the rule has been to place the homestead in her possession and under her control, the law presuming that this gave all necessary protection to the minor children." So, upon this ground alone, the judgment against Ellen upon this proposition can be upheld. But the jury found against her on the ground that she (Ellen) had abandoned such homestead rights as she had, and we think the evidence sufficient to sustain this finding.

We regard the present case as an illustration of the wisdom of the rule as announced by Judge Stayton in Ashe v. Youngst, supra. The widow and daughters lived upon the homestead in peace and amity from the death of the father until the marriage of Mollie to Salmons, enjoying its fruits in common. Up to that time the purpose of the law had been accomplished, in that the natural affection of the mother for the children had proved their ample protection. Opposition to the marriage of Mollie and other incidents connected therewith resulted in differences and contention against which no law can provide, and for the unfortunate consequences of which there is no remedy. Ordinarily persons holding and using property in common can, when differences arise which

make such use impossible, secure a partition and enjoy their shares in severalty.  But as to a homestead, partition can not be had as against the surviving wife.  To permit it would be to defeat one of the prime purposes of the exemption.  While the mother and children remained together the homestead was ample for their joint support.  To compel the mother to share the proceeds with the daughter for her maintenance elsewhere would in some cases render the amount insufficient for the support and maintenance of either.  In case of a residence homestead in a city bringing in no revenue such a course would be impossible.  It follows, we think, that in such a contest the rights of the children, if any they have to the homestead, must give way to the paramount right of the mother.  It follows also from what had been said that it was properly adjudged that Ellen take nothing on her prayer for a money judgment, since the right to it was based on her alleged rights in the homestead.

The 37 acres of the homestead which, on application of the mother as guardian, was conveyed to Mollie in exchange for outside lands belonging to her, was adjudged to Mollie, with right of immediate possession and use.  As to that part of the decree, the appellee has undertaken to cross-assign error, but it is not presented in such form as to require our notice.

Appellant Mollie Salmons assails the verdict and judgment for adjudging to appellee a homestead right to the 48 acres of the homestead originally allotted to her, subject to her mother's rights.  She contends that this was error; first, because her mother had abandoned such homestead right as she had thereto, and second, that the proof shows that the receipt hereinbefore set out recited its surrender and delivery, and that appellee can not question its effect.

It has already been shown that the evidence sustains the finding of the jury that the appellee had not abandoned any of her homestead rights.  The receipt alone is insufficient to sustain the contention of appellant Mollie Salmons, and as to the facts attending its execution and the purpose for which it was executed, the evidence is conflicting.  We do not feel authorized to disturb the conclusion which the jury must have reached upon that issue.  The complaint that the trial court erred in failing to submit to the jury the issue of estoppel growing out of the receipt and the facts attending its execution is without merit.  It was a question of contract, of what was agreed to be done, and the issue of estoppel is not presented.

This litigation has been pending for years, and during its progress the trial court made many orders not necessary to be here set out.  The 37 acres of land adjudged to Mrs. Salmons was in the possession of her and her husband from the institution of this suit until it was turned over to the receiver in 1899.  The receiver's report in the statement of facts, and which was adduced on the trial, did not disclose whether any of the money reported on hand was the proceeds of the rental of the 37 acres adjudged to Mrs. Salmons.  He merely reported the gross sum on hand, without indicating the special sources from whence it came.  No objection was made to the report at the time of its introduction, and it

was supplemented by no proof which indicated the extent to which Mrs. Salmons was entitled to share in the funds. She had asserted an interest therein, and should have adduced some proof from which the jury might determine the extent of her interest. This she did not do, and the jury were unable to adjudge her any. The issue was not submitted by the court, nor was any special charge asked on the question. The extent of the rights of appellee and Mrs. Salmons in and to that fund was not in fact adjudicated on the trial, but the verdict of the jury established their respective interests in the land. Prior to the entry of the final judgment the trial court heard the receiver's final report and prayer for discharge. This report indicated that $89.25 was all the revenue he had received from the 37-acre tract adjudged to Mrs. Salmons, and that all the other funds on hand were derived from the lands adjudged to Mrs. Thomas. The truth and correctness of the report was not and is not questioned. But the trial judge, after hearing the report, adjudged the funds to appellee and to Mrs. Salmons, in accord with their rights as indicated by the verdict as to the land, and in accord with the receiver's report. Mrs. Salmons thus received the $89.25, the entire proceeds of the rent of the 37 acres, and if the verdict is right as to her interest in the homestead tract, she does not contend that she is entitled to a greater sum than that indicated by the receiver's report. The technical objection is made that the entire judgment should be reversed because the verdict of the jury did not dispose of the funds in the hands of the receiver. It was a matter not absolutely necessary to be adjudicated on the trial. It was not in fact adjudicated, and we think the court did not err when, in passing on the receiver's final report and discharge, he adjudged the funds to be paid out in accordance with the rights of the parties as fixed by the verdict.

The further objection is made that the judgment of the court did not dispose of the $113 rent note which the receiver reported as on hand. Of this appellants can not complain, for if the verdict of the jury is otherwise correct, the note inevitably belongs to appellee. It is also urged that the court erred in refusing to sustain appellants' objections to the part of the petition asking for judgment upon certain money demands, on the ground that to combine a suit for those demands with a suit to recover possession of the homestead was a misjoinder of causes of action. It is unnecessary to state the nature of these claims. All but one are averred to have grown out of the alleged invasion of the homestead rights, and we are inclined to the opinion that appellants' objection was not well taken; but if this were not true, the fact remains that no recovery was had thereon and no harm is shown.

We have not disposed of the assignments of error in their order or in detail, but have endeavored in the foregoing opinion to dispose of the questions raised. We are of opinion that no harmful error has been made to appear, and that the evidence is sufficient to support every conclusion which the jury must have reached in arriving at their verdict.

*Affirmed.*