### GOOD v. GOOD et al. (No. 448.)

Court of Civil Appeals of Texas. Waco.
March 10, 1927.

Rehearing Denied April 7, 1927.

1. Homestead &#11834;134—Right to continued use of homestead as it existed on death of spouse vests immediately in survivor, unless forfeited by abandonment (Const. art. 16, § 52; Rev. St. 1925, arts. 3496, 3497, 3501).

Under Const. art. 16, § 52, Rev. St. 1925, arts. 3496, 3497, 3501, providing homestead shall not be partitioned among heirs of deceased during lifetime of surviving husband or wife, or while survivor may elect to use it as homestead, right to continued use, as it existed at time of death of spouse, vests immediately in survivor, unless forfeited by abandonment.

2. Homestead &#11834;214—Persons claiming forfeiture of homestead by abandonment of surviving spouse must prove abandonment was without just cause, continuing until other's death (Const. art. 16, § 52; Rev. St. 1925, arts. 3496, 3497, 3501).

To show abandonment operating as forfeiture by surviving spouse of homestead rights under Const. art. 16, § 52, Rev. St. 1925, arts. 3496, 3497, 3501, persons claiming benefit of forfeiture by abandonment are required to show surviving spouse abandoned deceased spouse, that such abandonment was without just cause, and that it continued until dissolution of marriage by death.

3. Homestead &#11834;140, 141 (2)—Voluntary or excusable separation of spouses does not constitute abandonment, forfeiting right of innocent survivor to homestead.

Separation of husband and wife, though continuing until death of one, does not constitute such abandonment as to forfeit right of survivor to homestead, where separation was by agreement, or was excused or justified by other spouse's conduct.

4. Homestead &#11834;214—Evidence held insufficient to support finding that husband and wife were not living together on wife's death, in husband's suit to establish homestead rights.

In suit by husband to establish homestead rights after wife's death, evidence held insuffi-

cient to support finding of jury that husband and wife were not living together and treating each other as husband and wife at time of wife's death.

5. Homestead &#11834;214—Right of surviving spouse to homestead is presumed to continue until proof of abandonment.

Right to use and occupancy of homestead having once vested in surviving husband or wife, such right is presumed to continue until abandonment is affirmatively proved.

6. Homestead &#11834;145—Removal and present or subsequent intent not to return to homestead as place of residence are necessary to constitute "abandonment" by surviving spouse.

To constitute abandonment of vested homestead right, surviving husband or wife must have removed from homestead with intent not to return to it as place of residence, or must have formed such intention after removal therefrom.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Abandon —Abandonment.]

7. Homestead &#11834;145—Temporary occupancy of other premises by surviving spouse does not constitute abandonment of premises formerly occupied as homestead, where no intent to abandon exists.

Temporary occupancy of other property which might be claimed as homestead does not constitute abandonment of homestead formerly occupied as such, where no intent to abandon exists; actual residence on property claimed as homestead being unnecessary to preserve homestead right.

8. Homestead &#11834;216 — Whether surviving spouse has abandoned premises formerly occupied as homestead is issue of fact.

Whether surviving spouse physically absent from property formerly occupied as homestead has abandoned homestead is issue of fact, depending on intention not to return and occupy homestead.

9. Homestead &#11834;145—Surviving husband, retaining possession in room till forcibly ejected, held not to have abandoned homestead, despite temporary residence on premises of second wife; there being no intent to abandon.

Surviving husband, who continued to keep possession in one room of dwelling occupied as homestead at time of wife's death, until forcibly ejected, having no intent to abandon, *held* not to have abandoned homestead rights, despite temporary occupancy of second wife's home.

Appeal from District Court, Falls County; Prentice Oltorf, Judge.

Suit by J. W. Good against John Good and others. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

Cecil R. Glass, of Marlin, for appellant.

Bartlett, Carter & Rice, of Marlin, for appellees.

---

&#11834;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

GALLAGHER, C. J. Appellant, J. W. Good, instituted this suit on the 4th day of May, 1925, to establish homestead rights in a tract of land consisting of 200 acres, and to enjoin the appellees, who are his children and grandchildren and husbands of his married daughters, from interfering with his use and enjoyment thereof. The injunction prayed for was granted, but appellant failed to make a bond, and no writ was issued. Appellees answered by a plea of not guilty and a general denial, and pleaded specially that appellant and his deceased wife, who owned the property, were not living together at the time of her death; that appellant did not have possession of said premises at that time; and that, since her death, he had abandoned said premises as a homestead. The case came on for trial in January, 1926. It was submitted to a jury on special issues, in response to which the jury found, in substance, that appellant and his deceased wife, Mary Bell Good, were not living together and treating each other as husband and wife at the time of her death, and that, after her death, appellant left said premises with the intention never to return and occupy the same as a homestead, or that he formed such intention after leaving the same. The court rendered a judgment that plaintiff take nothing by his suit, and that the defendants go thence without day. This judgment is here presented for review.

## Opinion.

Appellant assails each of said findings of the jury, and contends that the same are not supported by the evidence. Appellant and his deceased wife, Mary Bell Good, in the year 1918, resided upon a tract of land consisting of 365 acres in Falls county, which was community property. They had been married many years, and had twelve children. There is nothing to indicate that any of said children were minors. Some trouble arose between appellant and his said wife at that time, and they made a voluntary division of the community property. In this division appellant conveyed to his said wife 200 acres off said tract, and reserved 165 acres for himself. The 200 acres conveyed to Mrs. Good contained the homestead improvements. After this division, appellant resided with his married son Enoch on said 165-acre tract. Nothing definite is shown with reference to the cause of this trouble and separation except that there were controversies and hard feelings between appellant and certain of his grown sons living on the place, and that he testified that on one occasion his said wife called him a liar and slapped his face. Some time after this separation appellant filed suit for divorce. This suit was never prosecuted, and was afterwards dismissed. One of the sons returned from the war an invalid and continued an invalid until he died. In the fall of 1920 this invalid son, who resided with his mother on said 200-acre tract, expressed a desire to see his father. On learning of this desire, appellant came to visit him, and from that time attended him constantly. During this time appellant claimed that his home was with his son Enoch on the 165-acre tract, but he seems to have remained with his invalid son both day and night. He slept on a cot in his son's room, and waited on him and nursed him until his death in September, 1921. Appellant testified that the day after the burial of said son a complete reconciliation between him and his wife took place. Immediately thereafter he moved his personal belongings from the home of his son Enoch to the old homestead. While he occupied a separate room, he testified that the relations between him and his wife were such as ordinarily exist between married people. About the time he returned, or shortly thereafter, all the children moved off the place, and he and his wife, so far as appears from the testimony, were the sole occupants thereof from that time until her death, which occurred in October, 1924. He also testified that at the time of the partition between him and his wife there was a mortgage against the whole 365-acre tract for the approximate sum of $3,000; that he did not assume this debt in such partition; that he sold his 165 acres at or about the time of the reconciliation between him and his wife, and discharged said mortgage out of the proceeds of said sale, thus perfecting the title of his wife to said homestead tract. He testified at considerable length concerning his contributions to the support of himself and wife after his return. He testified that one year he raised a crop on the farm; that during the whole of said time he raised and marketed garden products, and that he milked the cows, churned the milk, and marketed butter. He also testified that he received a monthly payment of $57.50 as insurance on account of the death of his said invalid son, and that, while the same was payable to him, he divided the same equally with his wife. He testified that he expended his receipts and earnings in making some permanent improvements on the place and in purchasing supplies for the joint use of himself and his wife. He and his wife visited their neighbors together, and the neighbors came and visited them. They joined in negotiating, executing, and delivering mineral leases on the homestead. The undisputed testimony shows that during all these relations they were apparently on good terms, and nothing unusual was observed either by their friends or those with whom they had business dealings. The greater part of his testimony in this respect was corroborated, and little, if any, of the same was contradicted by any testimony in the record. The principal circumstances relied upon by appellees to support their contention that the marital relations were never resumed between appellant

and his' deceased wife were that, after his return, she continued to rent such of the lands as were rented, to collect the rents, to pay the taxes, and that she kept a bank account of her own separate and apart from appellant. They also emphasize the fact that appellant and his wife occupied separate rooms, and one of the sons who was a frequent visitor during said time testified, without disclosing his means of knowledge, that his father and mother did not live together as man and wife.

[1-4] Section 52 of article 16 of the Constitution of this state provides that the homestead shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead. The right thus conferred is confirmed by express statutory provisions. R. S. arts. 3496, 3497, and 3501. This right to the continued use of the homestead as it existed at the time of the death of the husband or wife vests immediately in the survivor, unless it has been forfeited by abandonment. In order to show an abandonment which will operate as a forfeiture of such right, it is incumbent upon those claiming the benefit of such a forfeiture to show that the surviving member of the marital partnership abandoned the deceased member; that such abandonment was without just cause or excuse; and that it continued until the dissolution of the marital partnership by death. Linares v. De Linares, 93 Tex. 84, 53 S. W. 579, 580; Markley v. Barlow (Tex. Civ. App.) 204 S. W. 1013, 1014, 1015 (writ refused); Hollie v. Taylor (Tex. Civ. App.) 189 S. W. 1091, 1092; Dugat v. Means (Tex. Civ App.) 91 S. W. 363, 364 (writ refused); Trawick v. Harris, 8 Tex. 312, 316, 317; Earl v. Earl, 9 Tex. 630, 633, 634; Newland v. Holland, 45 Tex. 588, 589, 590; Duke v. Reed, 64 Tex. 705, 712, 713; Cockrell v. Curtis, 83 Tex. 105, 107; 18 S. W. 436. On the other hand, notwithstanding there may have been a separation of the husband and wife, and such separation may have continued until the death of one of them, if such separation was by agreement, or excused or justified by the ill treatment of the other, it will not constitute such an abandonment as to forfeit the right of the innocent survivor to the enjoyment of the homestead, if any, used and occupied by them at the time of such separation, nor, in the case of a surviving wife, to an allowance in lieu of homestead, if they had no homestead at the time of separation. Linares v. De Linares, supra; Earl v. Earl, supra; Markley v. Barlow, supra. The testimony in this case does not show that appellant was solely to blame for the separation between him and his deceased wife. He returned, and she received him amicably, and permitted him to enjoy the joint occupancy of the home with her. She joined him in visits to their neighbors and friends and in receiving visits from neighbors and friends in return. They joined in executing legal papers as though no separation had ever taken place, and, according to the undisputed testimony, each contributed toward the expense of maintaining the home, and each performed his or her respective duties in connection therewith. The finding of the jury to the effect that appellant and his deceased wife were not living together and treating each other as husband and wife at the time of her death is without sufficient support in the evidence, and is set aside.

It appears from the testimony that, at the time of the death of the wife, the cultivated lands were rented out, and that most of the rents for that year had been collected by her. Appellant seems to have remained in undisputed possession of the residence until about January 1, 1925. While there is nothing in the pleadings with reference to a will, there is parol testimony in the record that Mrs. Good left a will, and that Ed Good, one of the children, was appointed administrator under the same. He asserted the right to possession of the home place as a part of her estate. He rented the farm to a tenant for the year 1925. Appellant either consented to such renting or acquiesced therein, and permitted the tenant to take possession of the premises and all of the residence, except one room, which he reserved for himself. He testified that he also reserved the right to keep his live stock on the place and to let them run in the pasture. He also testified that he continuously asserted his right to the use and occupancy of said homestead, and that said administrator denied same. Appellant cooked, ate, and slept in the room reserved by him. He was absent considerable during the first part of 1925 on account of the serious illness of his son Enoch, who died in the early summer of that year. According to his testimony, continual friction existed between him and appellees with regard to his claim of homestead rights, and such friction resulted in the filing of this suit on May 4, 1925, as hereinbefore stated. Shortly after filing this suit appellant went to work for Mrs. Barnhill, a widow residing in that community. In June, 1925, he married her. She resided on a tract of land consisting of 100 acres, which is referred to as hers, though the nature of her title thereto was not shown. After his marriage to her, appellant lived at her home until her growing crop was matured and gathered. He kept all his personal effects, except some wearing apparel, in his room on the old homestead. He visited the same after his marriage only from time to time. These visits were made during the daytime. He continuously and strenuously insisted on his homestead rights in the premises in controversy in this suit. The tenant occupying the premises sometimes left and locked up the house. The testimony shows that on such occasions appellant would remove a screen and enter his

room by a window. Later on appellant changed the lock on the door to his room and kept the key. One of the appellees testified that he made a key to fit the new lock, entered said room, removed all appellant's property therefrom, and stored the same in a garage, thus forcibly taking possession of said room. Appellant and his second wife rented her place for the year 1926. They could not then move into the homestead in controversy because appellant was forcibly excluded therefrom. At the time of the trial of this case they were occupying temporary quarters rented by them, awaiting the result of such trial. There is nothing in the record indicating that appellant ever claimed or asserted homestead rights in the 100-acre tract of his second wife.

[5-9] The right to the use and occupancy of the homestead having once vested in the surviving husband or wife, such right is presumed to continue until there is affirmative proof of abandonment. Laucheimer & Sons v. Saunders, 97 Tex. 137, 140, 76 S. W. 750; Wilder & Co. v. McConnell, 91 Tex. 600, 604, 45 S. W. 145. To constitute abandonment, such surviving husband or wife must remove from the homestead, with intent not to return to it as a place of residence, or must, after removing therefrom, form such definite intention. Graves v. Campbell, 74 Tex. 576, 579, 12 S. W. 238; Harle v. Richards, 78 Tex. 80, 83, 14 S. W. 257. It is not necessary for such surviving husband or wife, in order to preserve the homestead right, to actually reside on such homestead. Foreman v. Meroney, 62 Tex. 723, 726, 728; Hall v. Fields, 81 Tex. 553, 558, 17 S. W. 82; Locke v. Bonnell, 14 Tex. Civ. App. 354, 37 S. W. 250. The temporary occupancy of other property owned by either of them and which might therefore be claimed as a homestead does not constitute an abandonment of a homestead formerly occupied as such, where no intent to abandon exists. Thomas v. Williams, 50 Tex. 269, 273 et seq.; Foreman v. Meroney, supra, page 728; Archibald v. Jacobs, 69 Tex. 248, 251, 6 S. W. 177; Reinstein v. Daniels, 75 Tex. 640, 642, 643, 13 S. W. 21; Baum v. Williams, 16 Tex. Civ. App. 407, 41 S. W. 840, 841 (writ refused); Hines v. Nelson (Tex. Civ. App.) 24 S. W. 541, 543; Thigpen v. Russell, 55 Tex. Civ. App. 211, 118 S. W. 1080, 1081, 1082 (writ refused); Lewis v. Pitts (Tex. Civ. App.) 275 S. W. 476; Bailey v. Bauknight (Tex. Civ. App.) 25 S. W. 56, 57. Abandonment is an issue of fact to be determined in each case from the entire evidence before the court or jury, and in cases of physical absence the lack of a definite intention not to return and use and occupy such homestead is the controlling fact. Sykes v. Speer (Tex. Civ. App.) 112 S. W. 422, 426; Speer v. Sykes, 102 Tex. 451, 119 S. W. 86, 88, 132 Am. St. Rep. 896. The uncontradicted evidence shows that appellant was in actual possession, control, and occupancy of one room in the dwelling; that he had his live stock running in the pasture; that, while this situation continued, claiming that some of the appellees disputed his right to the use and occupancy of said homestead, and were interfering with his property thereon and his possession thereof, he filed this suit to establish his homestead claim and to enjoin appellees from interfering with his possession. While such suit was pending, he hired out to his neighbor, Mrs. Barnhill. He shortly thereafter married her. The single room reserved by him from the tenant was necessarily inadequate as a place of residence for both him and his wife. He therefore spent most of his time at her home. There is no evidence whatever in the record showing that he ever uttered a word which might be construed as indicating an intention to abandon his own homestead and reside permanently on his wife's farm, which was only half as large. He testified no such intention existed. His testimony to this effect is not only uncontradicted, but it is corroborated by practically all the facts and circumstances in evidence. While he did not sleep in his room on his own homestead after his marriage, he kept all of his household property and effects therein, except a limited amount of wearing apparel. He returned to said room frequently during the daytime; thus continuing actual possession and control thereof. On occasions when the tenant locked up the house and left he asserted his right and authority by removing the screen and entering his room through the window. He then changed the lock on the door, and kept the only key thereto. We think he effectively maintained possession of his said room until one of the appellees made a key, unlocked his door, removed his property and effects to the garage, and thus forcibly evicted him from the premises. This occurred during December, 1925. He and his second wife remained on her place only long enough for the crops growing thereon to mature and to gather the same. They then rented her place to a tenant for the succeeding year, and moved to rented rooms to await the result of this suit. We think the evidence in this case not only fails to show that appellant ever intended to abandon his homestead, but that it shows affirmatively that he was continually asserting his rights therein, and clinging tenaciously thereto. The only circumstance relied on by appellees to show abandonment is that, under the situation above disclosed, and in order to be with his newly wedded wife, he accepted temporarily the shelter of her roof while he aided her in cultivating and gathering the crops growing on her farm when he married her. In our opinion, this single circumstance, fully explained, and which explanation was fully corroborated, is insufficient to support the finding of abandonment. Such being the case, it is our duty to set said finding aside. Thomas v. Williams, 50 Tex. 269, 273 et seq.; Farmer v. Hale, 14 Tex. Civ. App. 73, 37 S. W. 164, 165

(writ refused); Ritz v. First Nat. Bank of Pecos (Tex. Civ. App.) 234 S. W. 425, 427, 428.

The judgment of the trial court is reversed, and the cause remanded.