Paul HUNTER, Appellant,

v.

Charles E. CLARK, Appellee.

No. 04–83–00501–CV.

Court of Appeals of Texas,
San Antonio.

March 6, 1985.

Samuel F. Biery, San Antonio, for appellant.

Morris Kirschberg, San Antonio, for appellee.

Before CADENA, C.J., and ESQUIVEL and BUTTS, JJ.

## OPINION

BUTTS, Justice.

The question on appeal is whether the surviving spouse waived his homestead rights to the separate property of his deceased wife. The court ruled in its construction of the premarital agreement that he did. The judgment of the trial court reflects the ruling that, as the result of the couple's premarital agreement, the surviving spouse did waive his homestead rights to the real property. The plaintiff, the only child and devisee in his mother's will, brought a declaratory judgment action, TEX.REV.CIV.STAT.ANN. art. 2524–1 (Vernon 1965), requesting the court to determine the status of the real property, a residence, of which he became the owner under the terms of his mother's will.

Before their marriage in 1968, Katherine V. Clark, the deceased, and Paul Hunter, the surviving spouse and defendant, executed a premarital agreement. Katherine's lawyer drew up the instrument and the two

signed the agreement in his office; Hunter was not represented by a lawyer. Article 4610 of the TEX.REV.CIV.STAT.ANN., in effect at that time, controlled,[1] the applicable statute now being section 5.41 of the TEX.FAM.CODE ANN. (Vernon Supp. 1985). The pertinent portions of the PREMARITAL MATRIMONIAL PROPERTY AGREEMENT are:

\* \* \* \* \* \*

Now, therefore, for and in consideration of the premises and the agreement by each of the parties to marry the other, the parties do mutually agree that from and after the date of this instrument and continuing through the termination of such marriage, whether the same by death or divorce, the property presently owned by each of the parties shall be and remain the separate property of that respective party.

It is specifically agreed that all of the property presently owned by the Party of the First Part, real, personal or mixed, and wherever situated, including but not limited to cash on hand, stocks, bonds, real estate and the improvements thereto, livestock and other property of every nature whatsoever, shall be and remain the separate property of the Party of the First Part throughout said marriage without regard to any change in the nature or extent thereof. It being specifically agreed that all increases in said property, as well as all appreciation in value of said property, shall be and remain the separate property of the Party of the First Part.

[The identical words were set out as to the separate property of the Party of the Second Part.]

\* \* \* \* \* \*

Each of the parties does by this instrument and for the considerations hereinabove set out, covenant and agree with the other that each party shall claim as his or her separate property and estate all of the property hereinabove set forth as separate property and that, in addi-

1. Repealed by Acts 1969, 61st Leg., p. 2707, ch. 888, § 6, eff. Jan. 1, 1970.

tion, the party owning such separate property shall have the full unrestricted power and right to control, manage and dispose of such separate property as that party may see fit at any time during said marriage relationship. Said power to control, manage and dispose of said property not being subject to the consent or approval of the other party in any manner whatsoever.

 * * * * * *

The evidence established that the only property of the deceased was the house where she and Hunter resided after their marriage until the time of her death in September, 1977. It was also shown that Hunter owned a house at the time of the marriage; however, the couple never lived in it. He testified that his son presently resided in his house. The evidence further reflected that Clark, the son of the deceased, had paid the taxes on his mother's house after her death until 1981, when Hunter paid part of them. Clark had also paid some utility bills immediately following the death. Hunter stated he had done some painting and repairs on the house. Hunter affirmed he had declared for tax purposes a homestead exemption on his separate property at the county tax office. There is no dispute that Hunter lived in the subject premises continuously from the time he married Katherine until the time of trial and still continued to do so. Although the death occurred in 1977, Clark did not file suit for declaratory judgment until May, 1982.

██ While Hunter assigns forty-nine points of appeal, it is plain they may all be addressed under one topic: whether there was a waiver of the surviving spouse's homestead right to the property in question. TEX. CONST. art. XVI, § 52 provides:

 Sec. 52. On the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution, but it shall not be partitioned among the heirs of the deceased

during the lifetime of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted, under the order of the proper court having the jurisdiction, to use and occupy the same.

TEX.PROB.CODE ANN. § 282 (Vernon 1980) provides:

 The homestead rights of the surviving spouse and children of the deceased are the same whether the homestead be the separate property of the deceased or community property between the surviving spouse and the deceased, and the respective interests of such surviving spouse and children shall be the same in one case as in the other.

TEX.PROB.CODE ANN. § 283 (Vernon 1980) provides:

 On the death of the husband or wife, leaving a spouse surviving, the homestead shall descend and vest in like manner as other real property of the deceased and shall be governed by the same laws of descent and distribution.

The language of the Constitution is plain. The surviving spouse has the same homestead rights as both spouses had prior to the death of one; and this is true whether the survivor be the husband or the wife. *Brown v. Reed,* 48 S.W. 537, 538 (Tex.Civ. App.1898, writ ref'd). The homestead provision is intended to relate to the rights of heirs and the surviving husband or wife, as between themselves, to the homestead property. *Spencer v. Schell,* 107 Tex. 44, 173 S.W. 867 (1915). TEX. CONST. art. XVI, § 52 gives to the surviving spouse the right to use and occupy the homestead, even though it was the separate estate of the deceased. *Jenkins v. Hutchens,* 287 S.W.2d 295, 298 (Tex.Civ.App.—Eastland 1956, writ ref'd n.r.e.). The deceased may not defeat this right by devising the property before death. *Wicker v. Rowntree,* 185 S.W.2d 150, 152 (Tex.Civ.App.—Amarillo 1945, writ ref'd w.o.m.).

██ Even if the survivor (Hunter) had a homestead right of his own when he

married, and at the death of deceased, he still owned and controlled that property, the survivor has a right to the subject homestead. *Clift v. Kaufman & Runge,* 60 Tex. 64 (1883); *Pressley's Heirs v. Robinson,* 57 Tex. 453, 460 (1882). This is true even though there is no doubt that Hunter owned a house where he could presently be living. The surviving spouse may use and occupy the homestead so long as he or she elects to do so. *Tiboldi v. Palms,* 34 Tex. Civ.App. 318, 78 S.W. 726, *aff'd* 97 Tex. 414, 79 S.W. 23 (1904). This applies against the creditors or heirs of the deceased. *Blum v. Gaines,* 57 Tex. 119, 122 (1882).

The homestead right is a right which vests immediately upon the death of the spouse and continues unless abandoned. *Good v. Good,* 293 S.W. 621, 623 (Tex.1927). The surviving spouse has the right to live on the premises for the remainder of his life without the permission of the deceased spouse's heirs. *Hill v. Aldrich,* 242 S.W.2d 465, 466 (Tex.Civ.App. —San Antonio 1951, writ dism'd). Testamentary disposition by the deceased may not destroy the right of the surviving constituent family members to use and occupy the homestead. *Lindsley v. Lindsley,* 139 Tex. 512, 163 S.W.2d 633, 636 (1942). The homestead right is a personal privilege with the attributes and incidents of a life estate. *Petrus v. Cage Brothers,* 128 S.W.2d 537, 538 (Tex.Civ.App.—San Antonio 1939, writ ref'd). It is in the nature of a life estate analogous to that of a life tenant. *Rancho Oil Co. v. Powell,* 142 Tex. 63, 175 S.W.2d 960, 963 (1943). The surviving spouse is not liable for rent payable to the heirs. *Pressley's Heirs v. Robinson, supra* at 458. But the surviving spouse is not entitled to reimbursement for improvements. During the continuation of his estate he is chargeable with the expenses of upkeep of the property. *Sargeant v. Sargeant,* 19 S.W. 382, 385 (Tex. Civ.App.—Fort Worth 1928, no writ). *See George v. Taylor,* 296 S.W.2d 620, 624 (Tex.Civ.App.—Fort Worth 1956, writ ref'd n.r.e.) as to rights of heirs.

We conclude that Hunter could rightfully elect to remain in the homestead premises, although it was the separate property of his wife, as mandated by the Constitution and statutes of Texas unless he had waived his personal privilege.

### WAIVER

The privilege of the homestead right may be abandoned. Once the right to use and occupy the homestead premises becomes vested in the surviving spouse, the right is presumed to continue until there is affirmative proof of abandonment. *Good v. Good, supra* at 623. *See Oelkers v. Clemens,* 260 S.W.2d 74 (Tex.Civ.App.— Austin 1953, writ ref'd n.r.e.). It follows that the privilege which is personal to the surviving spouse may be waived. *See Williams v. Williams,* 569 S.W.2d 867 (Tex. 1978). A definition of waiver appears in *Cattle Feeders, Inc. v. Jordan,* 549 S.W.2d 29, 33 (Tex.Civ.App.—Corpus Christi 1977, no writ):

Waiver, whether express or implied, is an intentional release, relinquishment, or surrender of a right that is at the time known to the party making it. In order to constitute a waiver, it is essential that there be an existing right, benefit or advantage, a knowledge (actual or constructive) of the existence and an actual intention to relinquish it. It must be a voluntary act made with full knowledge of the facts.... [Citations omitted.] A waiver takes place where one dispenses with performance of something which he has a right to exact, and occurs where one in possession of any right, whether conferred by law or by contract, with full knowledge of material facts does or forbears to do something, and such action is inconsistent with his right or his intention to rely upon it. [Citations omitted.]

The payment of taxes by the devisee under Katherine's will is not a showing of Hunter's abandonment of the homestead rights. *Salmons v. Thomas,* 25 Tex.Civ.App. 422, 62 S.W. 102, 104 (1901, no writ). Similarly, this would not constitute waiver by Hunter. Moreover, the designation by Hunter of his

former homestead property for taxation purposes, while it may be challenged by the taxing authority, is not such conduct which will demonstrate waiver.

### PREMARITAL AGREEMENT

 It is to the premarital agreement which this court must look for Hunter's intentional relinquishment of the homestead right known to him at the time he made the agreement. As indicated in the colloquy between the trial court and counsel, the trial court as well as the parties looked to *Williams v. Williams, supra,* for guidance. The 1978 Texas Supreme Court opinion concerns the waiver of homestead rights contained in a premarital agreement. The *Williams* agreement provided in part:

Whereas the parties desire that all property now owned or hereafter acquired by each of them shall, for testamentary disposition, *be free from any claim of the other that may arise by reason of their contemplated marriage.* [Emphasis added.]

It is therefore agreed:

1. Property to be separately owned.

After the solemnization of the marriage between the parties, each of them shall separately retain all rights in his or her own property, whether now owned or hereafter acquired, and each of them shall have the absolute and unrestricted right to dispose of such separate property, *free from any claim that may be made by the other by reason of their marriage, and with the same effect as if no marriage had been consummated between them.* [Emphasis added.]

[A supplemental agreement was simultaneously executed and incorporated into the basic agreement. It disclosed the properties that each spouse would bring into the marriage, set forth certain guidelines concerning living and other incidental expenses to be incurred during the marriage.]

*Williams v. Williams, supra,* at 868. "The question presented by this cause is whether a premarital agreement to waive the constitutional and statutory rights of a surviving spouse to a homestead and other exempt property is valid," was the majority view of the *Williams* question on appeal. That court thus adopted the premise that one major purpose of the *Williams* agreement was that the parties before entering into their second marriage, each owning considerable properties separately, were by the terms of the agreement waiving their prospective homestead rights to the separate property of the other. As noted in the dissent, the majority apparently relied upon the general language of the agreement that each spouse's separate property shall be *free from any claim* by the other spouse that may arise as a result of the marriage. It is noteworthy the majority opinion never examined the content of the premarital agreement to determine whether it contained language sufficient to be a waiver. It presumed that agreement was a waiver of the homestead right and only addressed the question whether the surviving spouse could waive the right by an antenuptial agreement. The court wrote, at 870:

While a "surviving" spouse is granted the right to occupy the homestead by section 52 [of the Texas Constitution], such language is not to be construed as a constitutional prohibition to a waiver of that right by prospective spouses. Therefore, we hold that Mrs. Williams waived her rights to the probate homestead and exempt property by the premarital agreement in question.

When we turn to the Hunter premarital agreement, we find no words such as "free from any claim" by the other spouse that may arise as a result of the marriage. We do find the words, "the property presently owned by each of the parties shall be and remain the separate property of that respective party." And, "shall be an remain the separate property of the [party] throughout said marriage ...." And, "the party owning such separate property shall have the full unrestricted power and right to control, manage and dispose of such separate property as that party may see fit

at any time during said marriage relationship."

At the time of the present trial, following the *Williams* decision, TEX.FAM.CODE ANN. § 5.45 (Vernon Supp.1985) had been enacted. Acts 1981, 67th Leg., p. 2964, ch. 782, § 2, eff. Sept. 1, 1981:

§ 5.45. Marital Agreements:
Burden of Proof

In any proceeding in which the validity of a provision of an agreement, partition, or exchange agreement made under this subchapter is in issue as against a spouse or a person claiming from a spouse, the burden of showing the validity of the provision is on the party who asserts it. The proponent of the agreement, partition, or exchange agreement or any person claiming under the proponent has the burden to prove by clear and convincing evidence that the party against whom enforcement of the agreement is sought gave informed consent and that the agreement was not procured by fraud, duress, or overreaching.

The evidence shows that Hunter had resided on the homestead premises from September, 1977, when Katherine died, until the time of suit. We hold his right to continue using and occupying the premises was presumed until there was presented affirmative proof of his waiver of the homestead right. We agree with Hunter that his right as a homestead claimant vested upon Katherine's death and the presumption of homestead continued. Since Clark relied upon the premarital agreement to prove waiver, Clark then had the burden of coming forward with clear and convincing evidence of a waiver of the right. This he did not do. Even had there been a provision in the premarital agreement which could be singled out as a waiver, which has not been shown, section 5.45 mandates proof that the surviving spouse gave informed consent. We hold, as a matter of law, that the premarital agreement in question is not a waiver of the surviving spouse's homestead rights.

The judgment is reversed and rendered.

CADENA, Chief Justice.

I concur in the result. The case involves only the interpretation of a written contract. I see no reason to embark on an excursion leading us into the confusing waters engulfing the amorphous doctrine of waiver.