## In re BROOKS.

District Court, N. D. Texas, Dallas Division.
June 25, 1928.

No. 2612.

1. **Bankruptcy ⊚⇒399(1)—Bankrupt may waive claim of homestead, and does waive it by scheduling property as subject to his debts.**

A bankrupt may waive his claim to exemption, including claim of homestead, and does waive such claim by scheduling the property as subject to his debts.

2. **Bankruptcy ⊚⇒399(1)—Title to homestead vests in trustee as of date of adjudication, where bankrupt waives claim in schedules.**

When a bankrupt waives his claim to homestead in his schedules, title to the property vests in the trustee as of date of adjudication, and a subsequent claim of homestead does not divest the property.

3. **Homestead ⊚⇒154—"Abandonment," as relates to homestead, is nonjudicial action, while "waiver" is owner's act in judicial proceeding.**

"Abandonment," as relates to homestead, is a nonjudicial action, while waiver is the act of the owner in a suit or judicial proceeding.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Abandon —Abandonment; Waiver.]

4. **Bankruptcy ⊚⇒399(1)—Bankrupt's erroneous listing of former home as asset did not waive right to claim homestead exemption.**

Bankrupt, leaving former home, taking up residence with new wife, and swearing to schedules in bankruptcy, in which he had not listed his former home as exempt, but, both before and after leaving it, having sought to sell it, *held* not to waive right to claim homestead as exempt, in view that bankrupt's listing of former home as an available asset for general creditors was an error.

In Bankruptcy. In the matter of Samuel B. Brooks, bankrupt. On petition to review holding of referee on homestead. Opinion of referee affirmed.

Neyland & Neyland and H. L. Carpenter, all of Greenville, Tex., for petitioner.

McCormick, Bromberg, Leftwich & Carrington, of Dallas, Tex., and B. M. McMahon, of Greenville, Tex., for bankrupt.

ATWELL, District Judge. For 20 years the bankrupt and his wife had resided on Washington street, in the city of Greenville. At the time of the wife's death, in January, 1927, they had a minor child and an adult married son, the first of whom lived with them. On December 24, 1927, he executed a deed conveying this home, together with the furniture therein, to his uncle, to whom he owed a large sum of money. On December 27, 1927, his uncle returned the deed to him, declining to accept it.

On December 26, he married again, and together with his new wife and minor child, took up his residence upon property belonging to her. On December 30 an involuntary petition in bankruptcy was filed against him, and on January 20, 1928, he was adjudged a bankrupt, and on January 30 he filed his schedules. In these schedules, of his former home, he said: "The residence on the north side of Washington street, in the city of Greenville, being the former residence of the bankrupt."

In another schedule, under the head of "Exempt Property," he claimed wearing apparel, $100; an automobile, and nothing more. On February 25 he sought and was given permission to "file amendments to his schedules." The application recited "an amendment to schedule B-5, showing additional property claimed to be exempted by state laws, its valuation, whether real or personal, its description and present use, and reference given to the statute of the state creating the exemption. Bankrupt would show that the matters shown by these amendments were omitted from the former schedules because he was unable at the time said schedules were filed to give a correct list and date in regard to all of his indebtedness and all property that belonged to his estate, and they were left out because he was unable to recall all of them at the time the schedules were prepared. That he had no regular set of books from which such information could be obtained."

The amended schedule itself is as follows:

"Property claimed to be exempted by state laws: Household and kitchen furniture, located in my residence on the north side of Washington street, in the city of Greenville, Texas; value $1,000. My residence, located on the north side of Washington street, in the city of Greenville, Texas, out of the John Gillespie survey; value $8,000.

"In my former schedule neither my residence nor the furniture were claimed as exempt. This residence was listed among my real estate, but by an error on the part of the parties preparing the schedules, as I had conveyed it, so I thought, to M. M. Brooks, but since he declined to accept the conveyance I am claiming the property as exempt under the laws of the state of Texas, and under article 3832, Revised Civil Statutes of the state of Texas. It is my intention to remove with my family to this property in the next few days. This property was occupied by me and my minor daughter until the time of my second marriage on the

26th of December, 1927. My second wife had a home of her own, and we have been living there since our marriage, but this property has been my homestead for about 20 years."

Both the original and the amended schedules were sworn to by the bankrupt. As said in White v. Stump, 266 U. S. 310, 45 S. Ct. 103, 69 L. Ed. 301: "The Bankruptcy Law does not directly grant or define any exemptions, but directs, in section 6 [11 USCA § 24], that the bankrupt be allowed the exemptions 'prescribed by the state laws in force at the time of the filing of the petition'; in other words, it makes the state laws existing when the petition is filed the measure of the right to exemptions. It further provides that a voluntary bankrupt shall claim the exemptions to which he is entitled in a schedule filed 'with the petition,' and an involuntary bankrupt shall claim his in a schedule filed within 10 days after the adjudication, unless further time be granted. * * * "

[1, 2] 1. A bankrupt may waive his claim to exemption, including claim of homestead, in some jurisdictions, and does waive such claim by scheduling the property as subject to his debts. In re Liby (D. C.) 218 F. 90; In re Gunzberger (D. C.) 268 F. 673; In re Haskin (D. C.) 109 F. 789; In re Von Kerm (D. C.) 135 F. 447. And when a bankrupt waives his claim in his schedules the title to the property vests in the trustee as of date of adjudication, and a subsequent claim of homestead would not divest this property. In re Sloan (D. C.) 135 F. 873; McWhorter v. Barnes (C. C. A.) 283 F. 1022.

[3] In Texas the head of a family may abandon his homestead or waive his right thereto; abandonment being a nonjudicial action, while a waiver is the act of the owner in a suit or judicial proceeding. Zeno v. Adoue, 54 Tex. Civ. App. 36, 117 S. W. 1039; Ringle v. Waggoner (Tex. Civ. App.) 238 S. W. 236; Bantuelle v. Chapman (Tex. Civ. App.) 256 S. W. 936; Gilbert's Collier, Bankruptcy, 192 (d).

2. One may not lose his homestead in Texas by going away from it. There must be a total abandonment with an intention not to return. Armstrong v. Neville (Tex. Civ. App.) 117 S. W. 1010; Herman v. Smith (Tex. Civ. App.) 141 S. W. 1087; Thigpen v. Russell, 55 Tex. Civ. App. 211, 118 S. W. 1080; Robinson v. McGuire (Tex. Civ. App.) 203 S. W. 415; Ran v. City National Bank (Tex. Civ. App.) 272 S. W. 510; Staten v. Harris (Tex. Civ. App.) 239 S. W. 334; Wiener v. Zweib (Tex. Civ. App.) 128 S. W. 699; Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832.

In Woodward v. Sanger Brothers (C. C. A.) 246 F. 777, it was stated that, whenever land has had impressed upon it the homestead character, its abandonment as a homestead must be beyond doubt, before the homestead protection will be refused. There must be an absolute and unequivocal intention to abandon, and, in most cases, the inference of abandonment will not be indulged, in the absence of the acquisition of a homestead. See, also, Weakley v. Johnson (C. C. A.) 294 F. 258.

3. The Texas law does not protect two homesteads for the same family, one for the husband and one for the wife. Holliman v. Smith, 39 Tex. 357; Slavin v. Wheeler, 61 Tex. 654; Crowder v. Bank, 114 Tex. 34, 261 S. W. 375. A homestead may be established on the separate property of the wife. Elliott Lumber Co. v. Mitchell (Tex. Civ. App.) 241 S. W. 221; Clem Lumber Company v. Elliott (Tex. Com. App.) 254 S. W. 935.

[4] Bearing those markings in mind, we have a case in which the bankrupt had left his former home, and had taken up his residence with his new wife, and had sworn to schedules in which he had not listed his former home as exempt. Both before and after leaving his former home he sought to sell it. His attorney suggests that a mistake was made, but the bankrupt neither so pleads, schedules, nor swears. He sought to deed to his uncle, a creditor. His right to sell and reinvest in another home is not here involved. He makes no such claim.

It is clear, however, from the statement of his former attorney, Judge Bowman, and from the statement of his uncle, Judge Brooks, that the listing of his former home as an available asset for the general creditors was error. Unmistakably, I think, he did not intend that the place should be put in his schedules at all. He probably thought that, since it was his home, he had a right to sell it, and use the money in preferential payment to his uncle, which is the right of a debtor in Texas.

Unmistakably, also, he knew that it had not been listed as exempt. Having ascertained, previous to the making of his schedules, that his uncle would not take the deed, he then sought to sell it to another, and did make a sale, which sale was not consummated for the reason that his minor daughter, by his deceased wife, had an interest through her mother, and no title could therefore be made. Discovering, then, that he could not

use it in the payment of his debt to his uncle, he sought permission to amend his schedules and claim it as exempt.

The solution is not at all easy, but it seems to me that, since there is the element, beyond peradventure, of uncertainty as to what he really intended to put in his schedules, and since he did not in his schedules specifically waive his homestead right, and since there has been no change in the status of the property, and no outside interest, and no transfer of any interest by the trustee, it would seem that the safer course would be to recognize his homestead interest. See Goodman v. Curtis, 174 F. 644 (C. C. A. 5th); In re Skelton (D. C.) 299 F. 606.

The bankrupt also suggests that, since the objecting creditors did not, in their pleading, claim a waiver by the bankrupt of his homestead right, on account of the schedules filed, that they may not, after more than 20 days have passed, set up the additional ground of waiver. Collier on Bankruptcy, p. 334; In re Cotton & Preston (D. C.) 183 F. 190; In re Krecun (C. C. A.) 229 F. 711.

Without determining that question, but merely calling attention to the fact that the creditors' exception filed within the time was very broad, and may therefore afford them the privilege of calling to the court's attention the effect of the bankrupt's acts, the opinion of the referee is affirmed, because of the foregoing views.