## MOORE v. DOWNIE BROS. CIRCUS.
### No. 14407.

Court of Civil Appeals of Texas.
Fort Worth.
July 10, 1942.

Rehearing Denied Sept. 11, 1942.

Charles C. McDugald and Kearby Peery, both of Wichita Falls, for appellant.

King, Dawson & Jones, of Wichita Falls, for appellee.

SPEER, Justice.

Plaintiff Downie Brothers Circus, a Georgia corporation, sued T. Leo Moore in a district court of Wichita County, seeking recovery on a written instrument alleged by plaintiff to be a guarantee by defendant of payment of an obligation owing by defendant's brother. These parties will bear the same designation here as in the trial court.

The instrument which forms the basis of this suit discloses substantially all things material for an understanding of the case. From it and other uncontroverted facts disclosed by the record, we observe that W. M. Moore, a brother of defendant T. Leo Moore, had been connected with various circuses for perhaps twenty years, and in 1938, decided to go into the business upon his own account. During that year he interested T. Leo Moore in the proposed enterprise and both sought to purchase a circus. They located one then at Hope, Arkansas, which was for sale. W. M. Moore went and inspected it, ascertained prices and terms upon which it could be bought and advised his brother. T. Leo Moore

then went to Arkansas, where negotiations were being made. The two Moores went to Macon, Georgia, and there dealt with Charles Sparks, the president of plaintiff, Downie Brothers Circus, corporation. The purchase price was agreed upon to be $25,000, to be paid $5,000 in cash and the remainder at the rate of $200 per week during what was termed the "circus season" in each of the years 1939, 1940, 1941 and 1942; payments to be made so that as much as $5,000 would mature during each of said years. After much consultation between seller and the buyers, it was determined that the buyers would and did form two Georgia corporations, one to be a holding corporation known as "Southern Circus Equipment Corporation", and the other for operating purposes, known as "W. M. Moore & Company". The exact date of forming these corporations does not appear but on February 11, 1939, the sale was perfected and evidenced by an instrument called a "conditional sales contract", from plaintiff Downie Brothers Circus, acting by Charles Sparks, its president, to W. M. Moore. The nature of the instrument is a combination bill of sale and reservation of title in the seller until the purchase money is paid. The testimony discloses conclusively that defendant T. Leo Moore made the $5,000 cash payment. There is nothing to indicate that W. M. Moore ever paid any amount from his private funds, but took charge of the equipment with the acquiescence of T. Leo Moore and the two Moores operated it for a season, until it became involved in financial difficulties. A receiver was finally appointed by a district court in Harris County, Texas, at the instance of Downie Brothers Circus (corporation), and was sold out under orders of the court. It is proper here to state that W. M. Moore, in whose name the conditional sales contract was made, never thereafter transferred to any one by any written instrument, the assets so purchased from Downie Brothers Circus. The two Moores operated it, but there is nothing to indicate in what particular name they did business. Default was made in the weekly payments maturing during 1939. Only $3,398.45 was paid, leaving unpaid $1,601.55. The owner of the obligation demanded payment and was threatening foreclosure.

On November 15, 1939, the obligation sued on in this case was executed by T. Leo Moore to Downie Brothers Circus. The instrument is lengthy but the pertinent rec-

itations are: That T. Leo Moore is a large stockholder and officer in Southern Circus Equipment Company, a Georgia corporation and that that corporation is the holder and owner of the assets described in the conditional sales contract above referred to by us, reciting that W. M. Moore had theretofore transferred all said assets to the last above named corporation, and that the corporation was holding said assets subject to said conditional sales contract. That Downie Brothers Circus was desirous of collecting the amounts due and unpaid on the contract, and T. Leo Moore was desirous of procuring an extension of time for payment and a reduction in the amount thereof. The debt was reduced to $1,501.55. By the terms of the instrument T. Leo Moore guaranteed the payment by W. M. Moore and/or Southern Circus Equipment Co. (referred to throughout parts of the instrument as "Southern"), on or before December 15, 1939. And if W. M. Moore and/or Southern did not make full payment on or before said date, he, the said T. Leo Moore, would do so; "and to that extent (he agreed) to be jointly and severally and primarily obligated with the said W. M. Moore therefor, it being the intent hereof that said payment shall be made by the undersigned (T. Leo Moore) without any necessity on the part of Downie (Downie Brothers Circus) pursuing any remedy against W. M. Moore or Southern or against any of the assets described in said contract", (meaning the conditional sales contract to W. M. Moore). The instrument contains this further provision: "(3) The undersigned (T. Leo Moore) further agrees to obtain from W. M. Moore any and all instruments which may be necessary to convey and transfer all of his right, title and interest in and to all such circus equipment and assets to Southern; to procure W. M. Moore's consent hereto should it be necessary, or should it be requested by Downie and to undertake to procure the consent of W. M. Moore to a novation of said conditional sales contract so that W. M. Moore may be eliminated therefrom and Southern substituted as obligor to Downie, provided same can be done without affecting in any way the lien of Downie under said original contract, or under the above referred to mortgage, bill of sale or other liens." This instrument was signed by defendant T. Leo Moore.

The obligation last above referred to was not paid by T. Leo Moore, and in De-

cember, 1939, Downie Brothers Circus filed a suit in the district court of Harris County, Texas, against W. M. Moore, Southern Circus Equipment Company and T. Leo Moore, to foreclose its lien on all the equipment described in the conditional sales contract, and procured the appointment of a receiver. No personal judgment was sought against either of the defendants, but allegations were made that each was claiming some interest therein and foreclosure of the lien was sought against all. The receiver sold the property and made his report to the court appointing him, asking for confirmation and discharge. T. Leo Moore employed counsel, who appeared at the sale by the receiver and gave notice that it would be contested. His counsel filed a protest to the receiver's report and contested same before the court. The sale was confirmed and the receiver discharged. Our reason for mentioning these proceedings will be apparent when we come to consider defendant's answer in the instant suit.

This suit was filed subsequent to the receivership proceedings. Plaintiff's action is based on the instrument of "guarantee" referred to and quoted from by us. The document was pleaded in haec verba.

Insofar as this appeal is concerned, defendant T. Leo Moore answered in this cause with special exceptions, among which was one in which it was claimed that plaintiff should not maintain the suit against him because the petition disclosed that he as guarantor had been sued alone without joining the principal, W. M. Moore. He pleaded general denial and specially that the instrument sued on was procured by fraudulent representations made by Sparks, president of plaintiff corporation, in that defendant executed the instrument sued on condition that Sparks, as president of plaintiff, would procure from W. M. Moore an assignment of all said circus property to the Southern Circus Equipment Company, and that when he signed said instrument the said Sparks represented to him that it contained all the provisions and conditions that they had agreed upon; that the instrument did not contain said agreement and but for the representations of Sparks that it did so contain their agreements, he would not have signed it.

The defendant T. Leo Moore further pleaded that at the time the receivership proceedings were pending in Harris County, the attorney for plaintiff Downie Brothers Circus, acting for plaintiff, represented to defendant that if he would not contest said receivership proceedings and the sale thereat, Downie would relieve him of his obligation on the instrument here sued upon; that he relied upon said representations and carried out his obligations made in connection therewith.

A large volume of transcribed testimony is before us and the greater portion of it is concerning the history of how defendant T. Leo Moore became involved in this controversy, much of which is concerning his brother, W. M. Moore, whom it seems he has not heard from in two or more years and whom none of the interested parties has been able to locate.

The trial court overruled defendant's special exception above pointed out, and tried the case to a jury on special issues. The verdict was favorable to plaintiff, the court entered judgment thereon for the amount sued for and defendant has appealed.

Defendant seeks a reversal on two points; they are, (1) the court erred in overruling his special exception challenging the right of plaintiff to sue him on a contract of guaranty, without making his principal a party defendant, and (2) error of the court in refusing to permit defendant to prove that Downie Brothers Circus (corporation) promised that if he would sign the instrument of guaranty it would procure from W. M. Moore a transfer of the assets involved in the conditional sales contract to Southern Circus Equipment Co., and that said promise was not done and performed.

In support of his first point, defendant cites and relies upon what was said in Wood v. Canfield Paper Co., Tex.Com. App., 5 S.W.2d 748, adopted by Supreme Court. To read that opinion is to discover the distinction between the facts there involved and those before us. There, Wood wrote a letter in which he guaranteed to the Paper Co. payment of merchandise to be sold to another to the extent of a sum named. The purchasing party failed to pay and the seller sued Wood on the indebtedness without making the purchaser a party defendant. Demurrer was urged to the petition for failure to make the purchaser a party and it was held the demurrer should have been sustained. If we correctly understand that opinion, it recognizes a dis-

tinction found between the facts in that and this case.

By Articles 6251 and 6252, R.C.S. it is provided that no surety, indorser or guarantor shall be sued unless his principal is joined, or a judgment has been previously rendered against the principal, except in cases provided for in Article 1987, R.C.S.

Article 1986 R.C.S. in substance provides that any principal obligor in any contract may be sued either alone or with any other party who may be liable thereon, but no judgment shall be rendered against such party not primarily liable on the contract unless the other principal obligor shall be made a party, or judgment had been previously rendered against him. By Article 1987, as especially applicable to the facts before us, it is provided that a guarantor may be sued without the necessity of joining the principal obligor when the latter resides beyond the limits of the state, or when his residence is unknown.

The testimony before us reveals that the original principal obligor, W. M. Moore, had no fixed place of residence, but his brother testified that he lived in Chicago and Los Angeles and was last heard from at Miami, Florida, but that he had not heard from him in two years at the time of trial; it is revealed that others made efforts to locate him but failed. By the instrument sued on, it will be observed that defendant obligated himself to be primarily bound for its performance, and that payment would be made by him without the necessity of pursuing any remedy against W. M. Moore, the original principal obligor. It is argued that the petition did not make any allegation that would excuse plaintiff from suing W. M. Moore as the principal obligor. Sufficient answer to this contention is that the written obligation sued on, with all its provisions, was specifically pleaded; by its terms defendant agreed that he would perform without involving W. M. Moore. Moreover, the issue as to the whereabouts of W. M. Moore subsequent to the time he abandoned the stranded circus at Houston, Texas, was before the court without objection by any one. It came from defendant as well as witnesses for plaintiff. If the uncontroverted testimony is to be considered, it is clear to us that W. M. Moore was at the time of trial either a nonresident of the state or that his residence was unknown, another condition that would authorize suit against defendant alone. The contention is that these facts were not pleaded by plaintiff. It remains that they were before the court and by implication the parties to the suit so presented and treated that as an issue. Under applicable Rule No. 67 of our Rules of Civil Procedure, a pleading as a basis for such testimony is not a necessary requisite. Among other things, the rule provides: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. * * * " In the circumstances before us we think the trial court did not commit reversible error in overruling the special exception.

The second point involves the refusal of the trial court to permit defendant to testify in effect that the contract sued on was procured from him through the fraudulent representations of the president of the plaintiff corporation. He pleaded, and if he had been permitted by the court, would have testified in substance that he and said president of the corporation agreed before he signed the instrument that the document would not become effective until the plaintiff corporation should procure from W. M. Moore a transfer and assignment of all the assets mentioned in the conditional sales contract to Southern Circus Equipment Co. (the newly formed corporation, almost wholly owned by defendant) and that plaintiff had failed and refused to make good its promise.

It is a well recognized rule of law that a purported right procured by the fraudulent acts of one claiming thereunder precludes his recovery. It is equally well settled that such fraudulent acts may be presented by testimony to that effect based upon proper pleadings. But these rules do not extend so far as to violate the well recognized principles of the best evidence rule. It will be noted that the contract sued on negatives the contention made by defendant. He contends that they previously agreed that plaintiff would procure from W. M. Moore an assignment of the assets to Southern Circus Equipment Co. and the instrument plainly provides that defendant will do the identical thing he contends plaintiff promised to do. It is not contended by defendant that he did not know the contents of the obligation he signed; at least he offers no excuse for not having

known its contents; he could not, under the best evidence rule, contradict its plain provisions. What we think is the correct principle here involved is found in 22 C.J. at page 1217 in this language: "A written contract which a party seeks to rescind on the ground of fraududent representations of the other party, contains provisions negativing the claim that the representations were relied upon, or contains other representations on the same subject inconsistent with the alleged oral representations, the oral representations are inadmissible, as varying the contract." See, also, 32 C.J.S., Evidence, § 979. The same rule is announced in Williston on Contracts, page 1822. A similar question to the one under consideration was involved in case of American Law Book Co. v. Fulwiler, Tex.Civ.App., 219 S. W. 881. It was there held that a special exception urged should have been sustained to the pleading of fraud and deception alleged to have been practiced in the procurement of the obligation sued on. No reversible error was committed by the trial court in this case in excluding the testimony offered by defendant to vary the contents of his written obligation.

Both points presented are overruled and the judgment of the trial court is affirmed.