YELLOW CAB & BAGGAGE CO. OF SAN
ANTONIO v. BRENNAN.
No. 11281.

Court of Civil Appeals of Texas.
San Antonio.

April 28, 1943.

Rehearing Denied May 26, 1943.

Randle Taylor, of San Antonio, for appellant.

Lang, Byrd, Cross & Ladon, of San Antonio, for appellee.

NORVELL, Justice.

Yellow Cab & Baggage Company appeals from a judgment rendered against it for the sum of $8,070 in favor of Roy C. Brennan, as and for damages sustained as a result of an automobile collision. Seven Thousand Seven Hundred Ninety-Five Dollars of this amount represents an award for personal injuries allegedly sustained by Brennan, and it seems safe to assume that the larger part of this sum was awarded upon the theory that Brennan's ability to follow a gainful occupation had been seriously diminished or destroyed.

Appellant by its first point contends that the amount of damages is highly excessive

and bears no reasonable relationship to any evidence of damages in the record.

Appellee's theory is that he sustained an injury to the brain tissues, known as a "sub-dural hematoma." If the evidence be sufficient to support the theory that Brennan actually sustained the type of injury claimed, it can not be said that the award in damages is either excessive or unsupported by the evidence. Such an injury or condition, as described by Dr. H. S. Tullos, one of the witnesses, consists of a clot of blood forming underneath the lining of the brain, which upon breaking down causes increased pressure on the brain and results in serious mental disturbances or death. According to the medical testimony, a person suffering from a hematoma may be able to do work calling for physical exertion for some period of time, but his condition probably will gradually worsen until he is wholly incapacitated or death results.

There is a conflict in the testimony as to whether or not Brennan is suffering from a sub-dural hematoma, or at least conflicting inferences may be drawn from the evidence. It is undisputed that at the time of the injury Brennan was employed as a tractor mechanic at Randolph Field, under a probational Civil Service appointment. He was injured on February 16, 1942, but returned to work at Randolph Field on March 19, 1942, and continued to work there until about June 1st. About June 8th, he went to work at Kelly Field as an airplane engine mechanic and apparently worked there steadily up until the time of the trial. This course of action indicated that no serious injuries had been sustained. However, Brennan's testimony was that he, as the head of a family consisting of a wife and two small children, was under an economic necessity to continue working as long as possible. Further, such a course of action was not impossible of pursuit by a person suffering from a hematoma, according to some of the medical testimony.

Dr. Tullos was Brennan's family physician and examined Brennan the morning after he was injured in the collision. His diagnosis of sub-dural hematoma was based upon at least two objective symptoms and numerous subjective symptoms described to him by Brennan. The objective symptoms were Brennan's unconsciousness immediately after the accident, and the fact that the pupils of Brennan's eyes at that time were unequal in size, indicating pressure on the optic nerve. However, the testimony as to these objective symptoms is not sufficiently clear so that their existence can be regarded as established as a matter of law.

Dr. E. W. Coyle also made an examination of Brennan the next day after the accident, but some time after Dr. Tullos had made his examination. He did not detect any inequality of eye pupils or dilation thereof. Dr. Coyle was also unable to find a bump, abrasion or cut anywhere upon Brennan's head which according to him would probably have been present had Brennan received a blow of sufficient force to cause a concussion accompanied by intercranial hemorrhage. However, in answer to a hypothetical question propounded by appellee's counsel, assuming numerous subjective symptoms (similar to one upon which Dr. Tullos based his diagnosis of sub-dural hematoma), Dr. Coyle stated, in effect, that the question was one for a competent neurologist.

By agreement of the parties, the trial court appointed two neurologists, Dr. Amos Graves, Jr., and Dr. W. J. Johnson, to make an examination of Brennan, and report as to his condition. The parties also agreed that both doctors were competent and qualified neurologists.

Doctors Graves and Johnson examined Brennan, made some inquiry of parties who had known Brennan's habits and characteristics prior to his injury, and attempted to determine his condition immediately after the injury. Both neurologists took the stand but did not testify in answer to hypothetical questions, nor were they subjected to cross-examination. Both detailed much testimony of a hearsay nature, from which, however, we are able to ascertain the hypotheses adopted by each of them in arriving at a final opinion.

Dr. Graves assumed that Brennan had not been rendered unconscious as a result of a blow which he had received in the collision. Seemingly based upon the premise that unconsciousness did not ensue and any inequality of the pupils of the eyes disappeared within two or three hours, Dr. Graves was inclined to believe that Brennan's injuries had never been serious from a medical standpoint. In his opinion there was no blood clot present inside the lining of Brennan's brain. However, Dr. Graves did state that: "If there is mental deterioration, I would grant that it is a result of accident if I could be convinced that Mr.

Brennan was rendered unconscious, which there is no evidence that I have found of unconsciousness, there is no evidence of cerebral trauma, and it therefore becomes difficult to concede that any mental deterioration, if present, is due to the accident; I mean by that, that I cannot come to a definite conclusion."

Dr. W. J. Johnson, from his investigation, came to the conclusion that an inequality of eye pupils was present shortly after the injury and, further, that Brennan was rendered unconscious by the accident. Dr. Johnson also reported inequality of blood pressure during the period of time he was under examination during the course of the trial. Further, that while the pressure of spinal fluid was within the range of normal, Brennan apparently slept better after the removal of a part of the fluid, and this result was probably due to a removal of fluid and consequent relieving of pressure. Dr. Johnson was of the opinion that Brennan had probably suffered a concussion of the brain with small intercranial hemorrhages. Dr. Johnson's conclusion was that the present condition of Brennan "is the result of an injury sustained to the brain, which was, in all probability, a severe concussion and damaging of the brain particle itself. This condition is growing worse, is increasing, in my opinion will continually grow worse. It is definitely caused by damage to the brain tissue itself."

The conflict of the testimony of Dr. Graves and Dr. Johnson, as above pointed out, was more apparent than real, due to some extent to a difference in accepted premises or assumptions. Dr. Johnson seemingly gave more effect to subjective symptoms than did Dr. Graves. It may be here stated that the testimony of Brennan, his wife and other witnesses as to Brennan's nervous irritability after the accident, change in personality, inability to sleep and constant headaches, is consistent with the theory of brain injury or sub-dural hematoma.

We shall not further discuss the medical testimony. There was evidence from which a jury was justified in believing that Brennan had been rendered unconscious as a result of the accident and that the pupils in his eyes were unequal in size for some time thereafter. Purely objective symptoms indicate that it is possible that he is suffering from a sub-dural hema-

toma. These taken together with the subjective symptoms detailed to the jury and made the basis of medical opinion, if given credit by the jury, support the conclusion that Brennan is probably suffering from a sub-dural hematoma. If this be so, it can not be said that the award of damages is either excessive or unsupported by evidence. Appellant's first point is overruled.

Appellant's second point is presented as one involving "newly discovered evidence." We disagree with appellant's legal analysis of the situation. The record presents a situation similar to numerous ones which arise in the trial courts but seldom are presented to an appellate tribunal. The attorney for the appellant knowing that Brennan had been employed by the military authorities at both Randolph and Kelly Fields undertook to secure certain official and confidential records relating to such employment. He finally secured the promise of an army officer that these records would be produced in court if subpoenaed. Appellant, however, announced ready for trial without said subpoena having been either issued or served. However, after Brennan had testified, a subpoena was applied for, issued and placed in the hands of the sheriff. Service was never had, however, as the Army Provost Marshal forbade service thereof. No motion for postponement or continuance of the cause was made because of the inability to serve the subpoena. We express no opinion upon the purely academic question of whether or not a postponement should be granted under such circumstances. After the trial had been concluded, appellant's attorney was advised by telegram from the Adjutant General at Washington that these confidential files would be made available. Certain papers from these files were exhibited upon motion for new trial and the contention made that they constituted newly discovered evidence of such nature as to warrant a new trial. It is sufficient to say that this evidence was mainly cumulative and impeaching in character. It shows that Brennan represented to the Army that he was in good health when he transferred from Randolph Field to a new job at Kelly Field, and that the Army Medical examination failed to disclose such physical disability as he claimed upon the trial.

The testimony before the jury showed conclusively that Brennan had worked at Kelly Field, and at least five medical doc-

tors and experts testified as to examinations of Brennan made by them and gave their opinions as to his condition.

█ This case well illustrates the inadvisability of the adoption of a rule which would award a new trial upon circumstances similar to that presented here. Appellant described the records which he sought to obtain as "official confidential records of plaintiff's employment by the United States Government." Being of such nature, there is nothing in the record to indicate that Lt. Col. Fischer, Provost Marshal of Kelly Field was acting arbitrarily or in excess of his authority in refusing to permit service of appellant's subpoena. As far as the record discloses, the submissions of these records for examination in civil litigation is a matter within the discretion of the military authorities. It can not be said that a new trial must be granted whenever the military authorities decide, after a trial has been concluded, that they will release confidential official information. In our opinion no abuse of discretion on the part of the trial court is shown in refusing to grant a new trial upon the grounds suggested. The judicial process affords means and sanctions for the procuring of attendance of witnesses and production of evidence for the benefit of either party. When these means are relied upon, the courts may grant postponement of trials or continuances thereof until the processes of the court have been rendered effective. Obviously, however, when a party, for good and sufficient reasons, does not rely upon the judicial processes afforded and does not have witnesses or documents under subpoena prior to an announcement of ready, but relies upon an arrangement of his own choosing or making, he is in no position to complain of the miscarriage of his plans after a jury has returned a verdict against him. Appellant's second point is overruled.

█ Further, if the matter be treated as one involving newly discovered evidence, we are of the opinion that the trial court's action should remain undisturbed, as we must assume that the trial judge, in the exercise of discretion vested in him by law, held the evidence to be of such a nature, cumulative and impeaching, as probably would not bring about a different result upon retrial. Texas & N. O. Ry. Co. v. Scarborough, 101 Tex. 436, 108 S.W. 804, 805; 31 Tex.Jur. 107, § 95.

█ Appellant's complaints of the argument of appellee's counsel do not present reversible error. Appellee's counsel did state that his client had a wife and two children and stated that appellant was a corporation. These remarks were not outside the record, and from the bills of exception we can not say that appellee's counsel appealed to the jury to make an award of damages simply because appellee had a wife and two children and the appellant was a corporation, or that the statement was inflammatory and constituted a prejudicial appeal. According to appellee's theory of the case, he continued working by reason of the urge of economic necessity, that is, because he was the head of a family dependent upon him for support. His counsel was entitled to argue this theory to the jury. We overrule appellant's third and fourth propositions.

█ By its fourth and fifth points appellant asserts that appellee's pleadings are insufficient to support a recovery for appellee's impairment of capacity to work. Appellee's pleading is rather general, but he pleaded that he had suffered an intercranial hemorrhage, and since said collision he "has suffered severe and painful headaches and is unable to pursue his calling as a mechanic on heavy trucks and tractors with the same speed and efficiency that he could prior to said collision and resulting injuries, due to the fact that he has lost much strength which at the time of the filing of this petition, plaintiff has not fully recovered."

No exception was lodged against this part of the pleading. Appellant points out no objections made to the evidence tending to show an impairment of capacity to work based on the contention that the pleadings were insufficient. Under these circumstances reversible error is not presented. Texas Cent. Ry. Co. v. Burnett, 80 Tex. 536, 16 S.W. 320; Rule No. 67, Texas Rules of Civil Procedure.

Appellant's remaining points, Nos. 7 and 8, assert that the trial court erred in giving a charge on the weight of the evidence. We have examined the charge and are of the opinion that it is not subject to the objection urged.

Having disposed of all of appellant's points and being of the opinion that none of them presents reversible error, an affirmance of the judgment appealed from is accordingly ordered.

Affirmed.