Mrs. Ernestine Banks COLEMAN, Appellant,

v.

A. Y. BANKS, Appellee.

No. 15859.

Court of Civil Appeals of Texas.

Dallas.

June 16, 1961.

Rehearing Denied July 14, 1961.

Ernestine Banks Coleman, per se.

Esir Tobolowsky and E. D. Hurt, Dallas, for appellee.

WILLIAMS, Justice.

A. Y. Banks and wife Ernestine Banks were divorced on May 26, 1946. At the time of their divorce they were the owners of certain real estate located at 4076 Stanford Street, City of University Park, which had been their homestead, and which was encumbered by a mortgage in favor of California-Western States Life Insurance Company. They were also the parents of one minor child. Prior to the divorce on May 24, 1946, the parties had entered into a written agreement which provided, inter alia, that A. Y. Banks agreed to pay off the mortgage on the property in question, payments to be made monthly by the terms of said mortgage, which included insurance and taxes thereon. Ernestine Banks was given the privilege of "residing in said house, and shall have the right to enjoy the use of the same as a home and as a home for George Banks for the balance of her natural life, and she agrees to occupy as her homestead as long as she shall have the custody of George Banks." The settlement agreement was incorporated as part of the divorce decree. Subsequently, on November 5, 1954, the house located on the real property hereinbefore described was totally destroyed by fire. Mrs. Ernestine Banks Coleman (having married Ernest A. Coleman) submitted proof of loss and entered into a settlement with Queen Insurance Company in the amount of $8,510.66, and said insurance company issued its draft in payment thereof, payable to A. Y. Banks, Ernestine Banks Coleman, and California-Western States Life Insurance Company. A. Y. Banks refused to endorse said draft. This suit was instituted in the District Court by A. Y. Banks against Mrs. Ernestine Banks Coleman, and her then present husband, Ernest A. Coleman, seeking a partition of the real estate and also seeking credit on his ½ interest in said property in the sum of $5,619.64 by reason of payments made by him on the mortgage held by California-Western States Life Insurance Company. Plaintiff, A. Y. Banks, also sought partition of the uncashed draft for $8,510.66 issued by Queen Insurance Company. Defendant, Mrs. Ernestine Banks Coleman, and her present husband, answered by general denial and certain special pleas and also impleaded Queen Insurance Company as a cross-defendant. Queen Insurance Company filed its answer and bill of interpleader making California-Western States Life Insurance Company a third-party defendant, and subsequently paid the $8,510.66 into the registry of the court and was allowed $250 compensation. California-Western States Life Insurance Company filed a disclaimer. Thereafter, Mrs. Ernestine Banks Coleman (without the joinder of her present husband) filed a Fifth Amended Answer and Cross-Action. Plaintiff's exceptions to various portions of defendant's cross-action was sustained. Plaintiff, by special pleas, alleged abandonment of the property as a home, waiver, estoppel, breach of agreement, and other special pleas. The case was tried to a court and a jury and, in response to three special issues the jury found (1) that defendant had voluntarily and permanently abandoned the use and occupancy of the property in question as her homestead; (2) that appellee had paid $5,619.64 on the mortgage, taxes and insurance on the property; and (3) that defendant had not waived any homestead rights in said property. Judgment was rendered awarding plaintiff ½ of the $8,510.66 paid into the registry of the court, the other ½ being awarded to defendant, subject to payment of costs; appointment of a receiver to sell the real estate, and out of the proceeds plaintiff was to receive the $5,619.64 which he had paid on the mortgage, taxes and insurance, and the remainder to be equally divided between plaintiff and defendant. Defendant has perfected her appeal to this Court, assigning 21 points of error.

By her first, seventh, tenth and thirteenth points, appellant contends that

the judgment is fatally defective because of lack of pleadings (a) to support the judgment awarding taxes and insurance; (b) in submitting Special Issue No. 1 inquiring about abandonment; (c) in submitting Special Issue No. 1 concerning voluntary abandonment; and (d) in submitting Special Issue No. 2 inquiring concerning the amount of payment on the mortgage by appellee. The parties, in their property settlement agreement, a portion of which is quoted above, expressly provided that A. Y. Banks was to pay the mortgage payments, "including taxes and insurance." Appellee's pleadings of his payment of $5,619.64 alleged "that the interest of the parties is subject to payment to the plaintiff of the sum of $5,619.64 by reason of the payment by the plaintiff of said sum to the California-Western States Life Insurance Company on the mortgage held by said company on the property, said payments being made by plaintiff since the plaintiff and said defendant were divorced by decree on May 26th, 1946 * * *." Without objection, appellee testified that he paid the sum of $5,619.64 which included principal, interest, insurance and taxes. Special Issue No. 2, as submitted to the jury, inquired as to the amount of money Banks paid on the mortgage, taxes and insurance on the property in question. To this question the jury answered "$5619.64". No objection was interposed by appellant to the submission of this issue on the ground of lack of pleading. We deem the pleadings on the issue of payment to be sufficient in view of the parties' prior written agreement which comprehended such payments to include taxes, insurance, etc. Appellee, by supplemental petition, pled that appellant had abandoned the property as a home. No exceptions were filed by appellant to such pleading. When the Special Issue No. 1 was submitted to the jury inquiring as to whether or not appellant had voluntarily and permanently abandoned the use and occupancy of the property in question as her homestead no objections concerning the inadequacy of the pleadings was then interposed by appellant. Appellee's pleading of abandonment was sufficient to put appellant upon fair and reasonable notice of appellee's contention and in the absence of a special exception or objection to the submission of said issues appellant cannot now be heard to complain. Since appellant did not object to the evidence, and made no objection to the charge as to the issues not being supported by pleadings, the issues were tried with the express or implied consent of the parties and therefore any objection of appellant has been waived. Rule 67, Texas Rules of Civil Procedure; Marshall v. Huron, Tex. Civ.App., 274 S.W.2d 572; Reberger v. Reed, Tex.Civ.App., 278 S.W.2d 591; Stephens v. Anderson, Tex.Civ.App., 275 S. W.2d 869; Moore v. Downie Brothers Circus, Tex.Civ.App., 164 S.W.2d 420; Yellow Cab & Baggage Co. of San Antonio v. Brennan, Tex.Civ.App., 171 S.W. 2d 891; Wiseman v. Zorn, Tex.Civ.App., 309 S.W.2d 253; Commentary of Robert W. Stayton in 20 Texas Law Review 30; Rule 90 T.R.C.P.; McKee v. City of Mt. Pleasant, Tex.Civ.App., 328 S.W.2d 224; Chandler v. Hendrick Memorial Hospital, Tex.Civ.App., 317 S.W.2d 248; Tolson v. Carroll, Tex.Civ.App., 313 S.W.2d 131. Appellant's first, seventh, tenth and thirteenth points are therefore overruled.

By her second and twenty-first points of error appellant contends that there is no evidence, or evidence of probative force, to support the finding of the jury to special issue No. 1 wherein the jury found that she had voluntarily and permanently abandoned the property as her home. As reflected above, the property settlement agreement between the parties provided that appellant had the right to enjoy the use of the property as her home for her and her child; that she agreed to occupy the same as her homestead as long as she had the custody of the child; and she further agreed to pay for necessary repairs. On November 5, 1954, the house located on the property in question was destroyed by fire. The amount of insurance carried on the house was $8,500 and appellant also carried $10,000 insurance on the household

furniture which she collected from the insurance company. The fire insurance company issued its draft payable to appellant, appellee and mortgagee, in full payment of the loss of the house and appellant obtained possession of this draft. The testimony reveals that she had a deed prepared for a conveyance of the property by appellee to her; that she left Dallas in an automobile with her son and went to Columbus, Mississippi (the residence of appellee) where she testified that she expected to find him drunk and she intended to reach him on New Years Eve, where she hoped to obtain his signature on the fire-loss draft and also on the deed. She, her son, and a notary public went to appellee's home shortly after midnight on New Years Eve but appellee refused to sign the draft. Appellee testified that he would not endorse the draft because he knew that appellant would not rebuild for the amount of the insurance draft in view of the estimate of $12,000 to $13,000 for rebuilding and that he had resolved not to sign another mortgage for the increased cost of rebuilding. Although appellant had collected over $10,000 on her furniture loss she was not willing to use it on the rebuilding unless she received full title by virtue of a deed from appellee. Appellee testified that appellant made no repairs on the property. Since June 1959 appellant has lived at 4416 Stanford Street which is the property that she and her present husband bought in August 1950. Appellant testified that she does not know where she intends to live in the future; that her plans are indefinite. She said: "I don't have any definite intentions about where I am going to live." Appellant further testified she did not make repairs on the property after the fire to make it livable as a home and that she has not lived in it since the fire. The property at 4416 Stanford was shown in the County of Dallas Tax Records as a homestead of appellant for each of the years for 1955 through 1958. The property involved in this suit was not shown as the homestead in the County of Dallas Tax Records for 1958 to 1960. This testimony, in our opinion, is abundantly adequate to support the submission of Special Issue No. 1 as well as the answer of the jury thereto. It has been uniformly held that abandonment of a homestead is a question of fact to be determined in each case from the entire evidence before the court or jury and that in cases of physical absence, the lack of definite intention of not to return and use and occupy such homestead is the controlling fact. Hix v. De Phillipi et al., Tex.Civ.App., 216 S.W.2d 643; Good v. Good, Tex.Civ.App., 293 S.W. 621; 1 Tex.Jur. p. 13, Abandonment, § 13; Simpson v. McLemore, 8 Tex. 448; Allen v. West Lbr. Co., Tex.Com.App., 244 S.W. 499. Appellant's second and twenty-first points are, therefore, overruled.

In her twelfth, nineteenth and twentieth points of error appellant contends that Special Issue No. 1, inquiring concerning abandonment, was not an ultimate issue, in that a life estate in realty cannot be abandoned or lost by partition, as a matter of law. Appellant's points thus presented postulate the existence of a legal life estate in the property involved. With this contention we cannot agree. The terms and provisions of the property settlement agreement between the parties, and by virtue of which appellant resided in the property following the divorce, did not agree to a legal life estate but merely granted to her the privilege and right to use and occupy the premises under certain designated conditions. As stated in 28 Tex.Jur. p. 53, Life Estate, § 3, life estate may be created by a deed, or by will or by operation of law. Moreover, the life tenant, and not the remainderman, must bear the expenses of the care and preservation of the property, including insurance premiums, taxes, etc. And if improvements have been made by him the taker of the future estate is not chargeable therewith although the erection or construction may be of a permanent nature. 28 Tex.Jur. p. 61, Life Estate, § 9. Appellant in this case expressly did not have to pay taxes and insurance under the agreement of the parties, nor did she obtain her right and privilege of occupancy of

the property by deed, will or operation of law. Nor is there any merit in appellant's contention that her use of the property in question cannot be abandoned. As stated by the Supreme Court in Dikes v. Miller, 24 Tex. 417: "It would seem that there is nothing in principle, to prevent the owner from abandoning his right to property in land, provided the intention to do so be evidenced by an act or deed, legally sufficient to operate a divestiture of his title." See also 1 Tex.Jur. p. 5, Abandonment, § 4 and § 9. Appellant having nothing more than the right or privilege of use and occupancy of the premises in question and not a legal life estate, her right therein is subject to abandonment. Appellant's twelfth, nineteenth and twentieth points are therefore overruled.

By points five and seventeen appellant asserts that the evidence is entirely insufficient to support the submission of Special Issue No. 2 and the answer of the jury to Special Issue No. 2 thereby, concerning payment by appellee of the amounts on the mortgage, taxes and insurance. As we are required to do, in this "insufficient evidence" point, we have carefully reviewed the evidence and find the same to be entirely sufficient not only to support the submission of the issue but also to support the finding of the jury thereon. Appellee testified expressly concerning the amounts that he had paid on the mortgage, taxes and insurance, as pointed out in our discussion of previous points. Points five and seventeen are therefore overruled.

By her points three, fourteen and fifteen, appellant complains of the action of the trial court in sustaining Special Exceptions to certain paragraphs of her cross-action and also in striking paragraph six of her cross-action. We have carefully reviewed the record in the light of these points and fail to find where any of them present error. The matters pled by appellant were a part of a cross-action for damages and none were pled as a defense to appellee's cause of action. The trial court sustained the special exceptions of appellee on several grounds and appellant has not demonstrated that the grounds sustained were not valid objections and exceptions to her pleading. Moreover, the record reveals that appellant was granted leave to file a trial amendment following the sustaining of the special exceptions and she was not limited as to what she could plead. The then attorney for the appellant tendered a trial amendment for filing to present what he considered a proper cross-action but appellant refused to permit her attorney to file such pleading. Appellant herself prepared a trial amendment for filing which her own counsel considered as not being correct and he therefore refused her to file it. In the light of this record we believe the failure on part of appellant to file proper pleadings cannot now be justly held to be the fault of appellee nor an error on the part of the trial judge. Appellant did not request a jury submission of any of the matters of which she complains. Finding no error appellant's points three, fourteen and fifteen are overruled.

In her fourth point appellant asserts that the trial court committed error in denying a continuance after sustaining certain special exceptions to her cross-action. The record reveals that there was no sworn written motion for continuance filed by appellant. Rule 251 T.R.C.P. provides specifically that no continuance shall be granted except for sufficient cause supported by affidavit or by consent of the parties, or by operation of law. Our courts have uniformly held that there was no error in denying a motion for continuance which is not supported by an affidavit. Hobbs v. Grant, Tex.Civ.App., 314 S.W.2d 351; Jinks v. Jinks, Tex.Civ.App., 205 S.W. 2d 816. Moreover, the law is well settled that the trial court's denial of a continuance will not be disturbed on appeal unless the record discloses abuse of discretion. Hays v. Department of Public Safety, Tex. Civ.App., 301 S.W.2d 276; Kramer v. Crout, Tex.Civ.App., 279 S.W.2d 932; Chandler v. Brown, Tex.Civ.App., 301 S.W.2d 720.

Furthermore, the record reveals that appellant had been granted three motions for continuance during the progress of this suit. Even after appellant's cross-action was involved by exceptions sustained thereto, the trial court granted her leave to file an amendment to properly plead her case. Her counsel did prepare and tender a proper trial amendment but appellant herself refused to permit the same to be filed. Under the circumstances revealed here by this record we find no merit in appellant's contention. Point four is therefore overruled.

Neither do we find any merit in appellant's points eight, nine and eleven wherein she contends that there was a conflict in the jury finding and answers to special issues Nos. 1 and 3, and that the trial court rendered judgment non obstante veredicto without granting her notice. There was no conflict between issues 1 and 3 having to do with abandonment and waiver.

The trial court by submitting the issues of abandonment and waiver, together with their proper legal definitions, submitted two separate concepts of recovery, a finding on either one of them would justify the relief sought by appellee. The distinction between abandonment and waiver is clearly demonstrated in 43–B Tex.Jur. p. 480, Waiver, § 3: "Distinctions —abandonment.—The doctrine of abandonment is closely related to, and in some respects is identical with that of waiver, since abandonment is also a relinquishment. It has been said that abandonment is a non-judicial action, while waiver is the act of the owner in a suit or judicial proceedings." In Texas the head of a family may abandon his homestead or waive his right thereto; abandonment being a non-judicial action, while a waiver is the act of the owner in a suit or judicial proceeding. In re Brooks, D.C., 27 F.2d 146. Furthermore, it is the duty of the trial court to reconcile any conflicts in the answers of the jury if it can reasonably be done. Apparent conflicting answers with reference to homestead were reconciled in Smith v. Stegall, Tex.Civ.App., 336 S.W.2d 470. It is only when the jury verdict is in hopeless conflict that the judgment will be reversed. Intges v. Dunn, Tex.Civ.App., 311 S.W.2d 877. A verdict must be liberally contrued with a view to upholding the verdict and avoiding the invalidation of it. Where it is possible the findings will be construed as to give them effect and reconcile them so that they will not be in conflict. In this case the trial judge rendered judgment pursuant to appellee's motion for judgment based on the jury's findings and not on motion non obstante veredicto. Appellant filed a motion for judgment based on the jury findings of waiver in her favor and for judgment disregarding the findings on abandonment and the amount paid on the mortgage, taxes and insurance. She did not file any motion for mistrial based on a conflict between the jury findings of abandonment and waiver. By her own action as reflected by her various motions appellant expressly recognized that there was no conflict in the jury findings. There being no conflict, and judgment being rendered on the verdict, appellant's points eight, nine and eleven are overruled.

We have given careful consideration to the remaining points set forth in appellant's brief and finding them to be without merit, they are overruled.

The fact that appellant is not a lawyer and has appeared in this court without representation of counsel has caused us to give more than ordinary care and consideration of the various points raised by this appeal. The record reflects that appellant has been represented by several different attorneys during the progress of the trial, and some confusion is reflected by apparent conflicts between her and her various counselors. Nevertheless, she has presented her points in a very adequate brief and has enlightened us with oral argument. However, after diligent review of the entire record in the light of the points presented we have concluded that the case was fairly and

744 ■ 

adequately tried. All of appellant's points being without merit the same are overruled.

The judgment of the trial court is affirmed.

### On Motion for Rehearing.

Appellant has filed a motion for rehearing and a motion under Rule 453, Texas Rules of Civil Procedure, requesting that we file conclusions of fact and law relating to her points 6, 12, 15, 16, 18, 20 and 22.

Appellant's points 12, 15 and 20 have been duly considered in our original opinion. Appellant's brief does not contain a point 22.

■ In her sixth point, which we overruled without full discussion in our original opinion, appellant complains that the judgment is defective in that it recites that "by agreement of the parties the Queen Insurance Company of America paid into the registry of the District Court the sum of $8,510.66" whereas, she contends such insurance company did not pay such money into the registry of the court because of any stipulation. Obviously there is no merit to this point since it is admitted by both parties that the sum of $8,510.66 was deposited in the registry of the District Court and the third-party defendant Queen Insurance Company of America was duly disposed of by the trial judge in his judgment. Therefore, such point becomes immaterial and is overruled.

■ In her sixteenth point appellant asserts that she was deprived of the right to be informed of corrections by the trial court on certain bills of exceptions. However, she wholly fails to show any error in that regard or that she has been denied any bills of exception to which she was legally entitled. The point is overruled.

■ By her eighteenth point appellant asserts that the judgment should be set aside because "defendant has a *meritous*

· cause of action and a gross injustice will be done if a new trial is not granted." In support of this general point appellant complains that one of her counsel refused to file a trial amendment which she had prepared but, instead drew a trial amendment which she refused permission for her attorney to file. The record shows that appellant had several lawyers throughout the proceedings herein involved and that she apparently has been unable to agree with any one of them as to how the case should have been presented. She is now representing herself. Certainly it would be unfair to the appellee, and to the Court, to permit a party to take advantage of a situation as thus presented. Appellant chose her own attorneys and the fact that she was unable to agree with them on procedure affords her no ground for granting a new trial. Appellant's point is overruled.

Again and in deference to appellant's status as a layman we have carefully examined all of her points raised on motion for rehearing. There is nothing in said motion to cause us to change our original opinion and therefore said motion is overruled.